Mark S. DANIELS, Plaintiff–Appellant,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Corporation, Defendant–Appellee.

No. 89–35654.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1990.

Decided Oct. 19, 1990.

Alexander (Zander) Blewett, III, Hoyt & Blewett, Great Falls, Mont., for plaintiff-appellant.

Robert J. Sullivan, Boone, Karlberg & Haddon, Missoula, Mont., for defendant-appellee.

Before HUG, NELSON and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Plaintiff-appellant Mark S. Daniels ("Daniels") was employed by defendant-appellee Burlington Northern Railroad Company ("Burlington Northern"). On November 19, 1987, Burlington Northern terminated Daniels's employment. Daniels filed an action against Burlington Northern in federal court for constructive fraud and breach of the covenant of good faith arising from his termination. The district court dismissed Daniels's action for lack of subject matter jurisdiction, holding that Daniels had failed to exhaust his administrative remedies under the RLA. The district court subsequently denied Daniels's motion for reconsideration. We reverse the denial of the motion for reconsideration and remand for proceedings consistent with this opinion.

## STATEMENT OF FACTS

Daniels was employed by Burlington Northern. On November 19, 1987, Burlington Northern terminated his employment. At the time he was terminated, Daniels was a trainmaster at Burlington Northern's Laurel, Montana yard. As a terminal trainmaster, Daniels supervised yardmasters, switch crews, dispatchers, and numerous other Burlington Northern employees. Daniels contends on appeal that he had the authority to hire and dismiss employees. Burlington Northern contends that Daniels had no authority to hire or dismiss employees. Both parties agree that Daniels was not a member of an employee's union, and was not covered by any collective bargaining agreement.

On December 30, 1987, Daniels filed an action against Burlington Northern in federal court for constructive fraud and breach of the duty of good faith and fair dealing arising from his termination. Burlington Northern moved for summary judgment on the grounds that Daniels's claims were preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"), or, alternatively, by the Montana Wrongful Discharge from Employment Act, Mont.Code Ann. § 39-2-913 *et seq.* Daniels opposed summary judgment on the ground that his status as a nonunion, management-level employee not covered by a collective bargaining agreement placed him outside the scope of the RLA as a matter of law. In addition, Daniels argued that it would be futile for him to pursue administrative proceedings. However, he did not raise any factual issues, agreeing that "the relevant facts are not in dispute." Daniels also argued that the Montana Wrongful Discharge Act had been found unconstitutional, with a final decision by the Montana Supreme Court pending.

On January 23, 1989, the district court dismissed the action on the ground that it lacked subject matter jurisdiction, noting that "[i]t is undisputed" that Daniels was an "employee" as defined by the RLA and that the RLA "specifically encompasses 'subordinate officials' such as [Daniels]." The court also held that the RLA applied to nonunion employees and that Daniels was required to exhaust his remedies under the RLA before seeking relief in federal court. The court did not address Burlington Northern's alternative argument based on the Montana Wrongful Discharge from Employment Act.

Daniels then moved the district court to reconsider its decision pursuant to Federal Rule of Civil Procedure 59. Daniels argued that, in his capacity as a terminal trainmaster, he was not an "employee" under the RLA, and asserted that the district court had incorrectly concluded that there was no dispute regarding this issue. He provided the court with an affidavit stating:

I was a trainmaster. I was an exempt employee and supervised the entire Laurel terminal. In this regard, I supervised yardmasters, switch crews, dispatchers and other numerous Burlington Northern Railroad Company employees.

Under no circumstances was I ever considered a subordinate official under the Railway Labor Act.

At the Rule 59 hearing, Burlington Northern produced an affidavit of William R. Grimstad stating that trainmasters "do not have the authority to employ or dismiss employees of Burlington Northern Railroad that they supervise." Daniels submitted an Employment Manual of Burlington Northern, dated September 1, 1977, indicating that trainmasters, such as Daniels, may have the authority to hire employees. Daniels also submitted a Burlington Northern Management Appraisal of him rating, among other things, his job knowledge as in compliance with all federal, state, and local EEO and affirmative action regulations. Daniels also moved to supplement the record with the deposition of William Grimstad, a Division Superintendent for Burlington Northern, and Burlington Northern's Offer to Arbitrate. In his deposition, Grimstad stated that the duties of a terminal trainmaster include "Getting the people, . . . and supervising the people to get the trains made up, cars in the proper trains, and moving efficiently." Exhibit 2 to the Grimstad Deposition defines the functions of a Terminal Trainmaster to include holding investigations, reviewing, and recommending discipline of employees.

On August 28, 1989, the district court denied Daniels's motion for reconsideration. The court also ordered that Daniels be allowed to file the Grimstad deposition and Burlington Northern's Offer to Arbitrate.

On September 6, 1989, Daniels filed his notice of appeal from the final judgment entered on January 23, 1989, and from the order, entered on August 28, 1989, denying his motion for reconsideration of that judgment.

On appeal, Daniels contends that his claims are not subject to the exclusive jurisdiction of the Board for three reasons. First, Daniels argues that he was not an "employee" under the RLA because he was a *management level* terminal trainmaster. Second, Daniels argues that his claims do not constitute a "grievance" under the RLA because the RLA applies only to disputes relating to collective bargaining agreements. Third, Daniels argues that the RLA does not apply to nonunion employees who are not subject to collective bargaining agreements.

## DISCUSSION

■ We review the district court's grant of summary judgment de novo. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). We review the district court's decision concerning a motion for a new trial pursuant to Fed.R.Civ.P. 59 for an abuse of discretion. *Hard v. Burlington Northern R.R.*, 812 F.2d 482, 483 (9th Cir.1987).

■ Under the RLA, if a claim is classified as a "minor dispute," the claim is subject to compulsory and binding arbitration before the National Railroad Adjustment Board or before an adjustment board established by the employer and the unions representing the employees (collectively, the "Board"). *Consol. Rail Corp. v. Railway Labor Exec. Ass'n*, — U.S. —, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) ("*Conrail*"). When a claim constitutes a "minor dispute," state law is preempted and the exclusive remedy lies under the RLA. *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.1978), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). The district court has no original jurisdiction over such claims; the claims are within the exclusive jurisdiction of the Board. *Conrail*, 109 S.Ct. at 2481.

■ A "minor dispute" subject to the exclusive jurisdiction of the Board includes "[a]ll disputes between a carrier or carriers and its or their *employees*, arising out of grievances or out of the interpretation or application of agreements concerning the rates of pay, rules, or working conditions." 45 U.S.C. § 152 Second (emphasis added); *Conrail*, 109 S.Ct. at 2480. An "employee" is "every person in the service of a

carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) *who performs any work* defined as that of an employee or subordinate official in the Orders of the Interstate Commerce Commission." 45 U.S.C. § 151 Fifth (emphasis added). Thus, the status of any person in the service of a carrier is determined by the character of his work and the applicable orders of the I.C.C. *See Brotherhood of L.F. & E. v. I.C.C.*, 147 F.2d 312, 315 (D.C.Cir. 1945). In determining whether a person in the service of a carrier is an "employee," the court must look to the orders of the Interstate Commerce Commission (the "I.C. C.") to determine the type of work that defines an "employee." *See Nat'l Council Of Ry. Patrolmen's Unions v. Sealy*, 152 F.2d 500, 501 (5th Cir.1945). The court must then make factual determinations concerning the nature of the work that the person whose status is in question performs, and decide whether work performed by the person fits within the I.C.C. definitions. *See id.* at 502.

 Daniels admits that he was a "person in the service of a carrier." However, Daniels contends that he was not an "employee" because he did not perform the work of an "employee or subordinate official" as defined in the I.C.C. orders. At the very least, he claims, there are unresolved issues of fact with regard to his employment status.[1]

Burlington Northern has pointed to several orders of the I.C.C. indicating that a person's status as an employee or subordinate official, as opposed to an official not covered by the RLA, depends on whether he has the authority to employ, dismiss, or otherwise discipline employees. *See* I.C.C. Order No. 72,232 I.C.C. 44, 48 (1939) (the authority to employ, dismiss, or discipline employees are "responsibilities that stamp [positions] as officials"); *see also* I.C.C. Order No. 72,255 I.C.C. 192 (1943); I.C.C. Order No. 72,264 I.C.C. 315 (1946); 253 I.C.C. 566 (1942).

Daniels presented evidence indicating that he had the authority to hire and dismiss employees. Daniels submitted an Employment Manual of Burlington Northern, dated September 1, 1977, indicating that trainmasters, such as Daniels, may have the authority to hire employees. Daniels submitted a Burlington Northern Management Appraisal of him rating, among other things, his job knowledge as in compliance with all federal, state, and local EEO and affirmative action regulations. Daniels also successfully moved to supplement the record with the deposition of William Grimstad, a Division Superintendent for Burlington Northern, and Burlington Northern's Offer to Arbitrate. Grimstad stated that the duties of a terminal trainmaster include "Getting the people, . . . and supervising the people to get the trains made up,

---

**1.** Burlington Northern asserts that Daniels raised the argument that he was not an "employee" under the RLA for the first time in his motion for reconsideration. [Red Brief page 5] We find that Daniels did raise this issue, however inartfully, in his opposition to Burlington Northern's motion for summary judgment where he stated that he "was a management employee." However, Burlington Northern correctly notes that Daniels did not raise the underlying factual issues (e.g. did he have authority to employ or dismiss employees?) during the summary judgment proceedings. Daniels's brief in opposition to summary judgment states that "there is no dispute concerning the relevant facts with respect to the legal issues presented in this case." [CR 21 p. 3] Thus, it was not improper for the district court to grant summary judgment.

In his motion for reconsideration, however, Daniels pointed out that the district court had incorrectly assumed that the parties agreed that

Daniels was an "employee" under the RLA and, on that basis, ruled in favor of Burlington Northern. Daniels also presented evidence to show that there were factual issues as to whether Daniels was an "employee" and the district court accepted the evidence to supplement the record, ruling that it did not alter its decision to grant summary judgment in favor of Burlington Northern. The court stated the new evidence did "not change the basic facts upon which the Court's Order was issued. . . . Although the Court is not completely convinced that these documents will aid the Court on the appeal of this decision, the Court will allow the Court of Appeals every opportunity to review the entire record in making its determination." Since the district court accepted and ruled on Daniels's new evidence in its consideration of Daniels's Rule 59 motion, we can consider this evidence in our review of the district court's denial of Daniels's motion for reconsideration.

cars in the proper trains, and moving efficiently." Exhibit 2 to the Grimstad Deposition defines the functions of a Terminal Trainmaster to include holding investigations, reviewing, and recommending discipline of employees. This evidence raises an issue of fact as to whether Daniels performed the work of an "employee or subordinate official" as defined by the RLA.

Summary judgment is not appropriate where there is a genuine issue as to a material fact. Fed.R.Civ.P. 56(c); *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626 (9th Cir.1987). Because there were unresolved factual issues as to whether Daniels performed work defined as an employee or subordinate official in the orders of the Interstate Commerce Commission, the district court abused its discretion in denying Daniels's motion for reconsideration of the summary judgment in favor of Burlington Northern. We therefore remand for the district court to address the factual issues involved and determine whether Daniels was an "employee or subordinate official" within the meaning of the I.C.C. orders.

Daniels also argues that his dispute is not a "grievance" under the RLA because his dispute does not involve or arise out of the application or interpretation of a collective bargaining agreement. However, the Supreme Court has stated that the RLA applies to disputes "founded on some incident of the employment relation, or asserted one, independent of those covered by the collective bargaining agreement, *e.g.*, claims on account of personal injuries." *Conrail*, 109 S.Ct. at 2480 (quoting *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945)).[2]

REVERSED AND REMANDED.

---

2. Daniels also argues that he is outside the scope of the RLA because he is a non-union employee not covered by a collective bargaining agreement. Since factual issues must be resolved to determine whether or not Daniels was an "employee" and we reverse on that basis, we do not decide whether someone who is an "employee" would be exempt from the RLA because he is not a member of an employees union and is not covered by a collective bargaining agreement.