Victor J. POLICH, et al.,
Plaintiffs–Appellants,

v.

BURLINGTON NORTHERN, INC.; Burlington Northern Railroad Company, a Delaware Corporation, Defendants–Appellees.

No. 90–35327.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1990.

Decided Aug. 26, 1991.

Alexander (Zander) Blewett, III, Hoyt & Blewett, Great Falls, Mont., for plaintiffs-appellants.

Randy J. Cox, Boone, Karlberg & Haddon, Missoula, Mont., for defendants-appellees.

Before WRIGHT, GOODWIN and NOONAN, Circuit Judges.

GOODWIN, Circuit Judge:

Following a series of mergers and reorganizations, the Burlington Northern Railroad Company closed its railroad operations in Livingston, Montana. Appellants, who include both former Livingston employees and spouses of former employees, sued the Burlington Northern Railroad Company and Burlington Northern, Inc. (collectively, BN) for damages arising out of the closure. They appeal the dismissal of the action for want of subject matter jurisdiction. We affirm in part and reverse in part.

The complaint alleged that BN breached its promise to employees and their spouses to keep its Livingston railroad facilities open and operational, and committed actual and constructive fraud in closing the facilities. The complaint alleged that BN made these promises during the course of two different corporate reorganizations.

The first incident allegedly occurred in 1970, when Burlington Northern, Inc. (the predecessor to the current BNRC) was created as a result of an Interstate Commerce Commission-approved merger among several railroads. The complaint alleged that at the time of this merger, railroad officials made public assurances that railroad facilities in Livingston would never close.

The second set of promises was allegedly made in 1980 and 1981. In 1980, BNI merged with the St. Louis–San Francisco Railway Company. In 1981, BNI changed its name to Burlington Northern Railroad Company (BNRC) and took control of all railroad operations and assets. BNI was reformed as a holding company, which now includes other businesses in addition to railroads. The complaint alleged that BNRC and BNI officials made public assurances that railroad operations in Livingston would not be adversely affected by either the St. Louis–San Francisco merger or the 1981 reorganization. The complaint further alleged that BN intended that the plaintiffs would rely on these promises and that the plaintiffs did so rely.

Defendants moved to dismiss, or for summary judgment, on the ground that plaintiffs' claims were preempted by the Interstate Commerce Act and the Railway Labor Act. Plaintiffs thereafter moved to file a third amended complaint, which included allegations that BN violated section 69–14–1002 of the Montana Code. This statute purports to require railroads to compensate workers when the value of their homes is destroyed by the closure of a railroad terminal or division point. The district court denied the motion and dismissed the action.

## I. Railway Labor Act Preemption

Appellants contend that their state law claims were not preempted by the Railway Labor Act (RLA), 45 U.S.C. §§ 151–163 (1988). They argue that their state law claims neither involve nor implicate any collective bargaining agreement, and hence do not constitute a "minor dispute" which would be preempted by the RLA.

This court reviews *de novo* the district court's dismissal for lack of subject matter jurisdiction. *FDIC v. Nichols*, 885 F.2d 633, 635 (9th Cir.1989). We may affirm on any ground finding support in the record. *See Smith v. Block*, 784 F.2d 993, 996 n. 4

(9th Cir.1986). We may affirm even if the district court relied on the wrong grounds or the wrong reasoning. *See Bruce v. United States*, 759 F.2d 755, 758 (9th Cir. 1985); *Alcaraz v. Block*, 746 F.2d 593, 602 (9th Cir.1984).

### A. *Employee Claims*

Under the RLA, 45 U.S.C. §§ 152–153, employer-employee disputes classified as "minor disputes" are "subject to compulsory ... arbitration before the National Railroad Adjustment Board ... or before an adjustment board established by the employer and the unions representing the employees." *Consolidated Rail Corp. v. Railway Labor Exec. Ass'n*, 491 U.S. 299, 303–04, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989). The district court lacks subject matter jurisdiction over "minor disputes." *Daniels v. Burlington Northern Railroad Co.*, 916 F.2d 568, 570 (9th Cir. 1990).

The district court held that a claim was a "minor dispute" subject to the exclusive jurisdiction of the RLA if it was "founded on some incident of the employment relationship," whether or not the claim was covered by a collective bargaining agreement. Appellants argue that the district court applied the wrong standard, and that preemption is proper only if the dispute involves the application or interpretation of an existing collective bargaining agreement. This argument does not assist appellants' cause. Even if preemption occurs only when resolution of the dispute involves the interpretation of a collective bargaining agreement, we have concluded that the employee-appellants' claims are preempted.

■ Appellants argued that their claims were not preempted because appellants would seek to prove that the promises at issue were outside the scope of the collective bargaining agreement (CBA). However, in determining whether a dispute is preempted, the plaintiff's pleadings and of-

fers of proof are not controlling. The claim is also preempted if the railroad seeks to defend its conduct on the ground that the conduct was justified by the terms of the CBA. *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 305–07, 109 S.Ct. 2477, 2481–82, 105 L.Ed.2d 250 (1989).

■ We will not find preemption if the railroad's assertion regarding the CBA is "frivolous or obviously insubstantial." *Id.* at 307, 109 S.Ct. at 2482. But the railroad's burden in establishing preemption is "relatively light," and we will find preemption if the employer's conduct is "arguably justified" by the terms of the CBA. *See id.* BN stated that it intended to defend its actions on the ground that those actions were permitted by the CBA, and that based on that proposed defense, appellants' claims were preempted.

The district court had before it the affidavit of Maxine Timberman, BNRC Assistant Director of Labor Relations. Timberman's affidavit, which was never contradicted, states that all employee-plaintiffs were covered by labor protective or collective bargaining agreements.[1] Each union had a separate agreement. Timberman attached one sample agreement, from 1964, which she swore contained provisions typical of each union's agreement. Timberman further swore that the closure of the Livingston facilities was conducted in accordance with those agreements.

Ms. Timberman attached copies of the letters notifying employee unions that work would be transferred from Livingston. She stated that "[t]he notices were issued in compliance with the Schedule Agreement and constituted the maximum notice required under the various protective arrangements for each of the involved crafts." She further swore that all unions with affected members negotiated with BN about matters such as "seniority, job protection, moving expenses and all matters

---

1. Timberman was able to identify the dates of service and the union membership of almost all employee-plaintiffs. She was unable to locate the records of four employee-plaintiffs, but as-

serted her belief that those four were also union members covered by collective bargaining agreements.

relating to employment termination or transfer."

The witness further swore that all of the collective bargaining agreements and protective agreements contained arbitration provisions. Appellants have never denied the existence or the coverage of the collective bargaining agreements, and the court had the right to accept the undisputed affidavit establishing that all employee-plaintiffs were covered by collective bargaining agreements.

Based on our examination of the 1964 agreement, we hold that BN's conduct was "arguably justified" by the CBA. The 1964 agreement specified what protections would be afforded to employees in the event that facilities were abandoned. We do not need to decide whether the agreement did in fact justify BN's conduct. We hold only that appellees have made a non-frivolous argument that their conduct was so justified; under *Consolidated Rail,* this is sufficient to cause the employee-appellants' claims to be preempted by the RLA.

■ Appellants argue that at the time the promises were made, no collective bargaining agreements could have existed between the appellee corporations and the employee-appellants, because the appellee corporations did not exist. However, appellants also insist that under Montana law, the defendant corporations are liable for the promises of their predecessor corporations. Montana law provides that following a merger, the surviving corporation "possess all the rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations." Mont.Code Ann. § 35-1-806(2)(d) (1989). In addition, the surviving corporation "shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated." *Id.* § 35-1-806(2)(e). Thus, BNRC and BNI are responsible for promises made by their predecessors. In addition, they assume the rights stemming from any collective bargaining agreements made with their predecessors.

## B. *Spouse Claims*

■ "Minor disputes" preempted by the RLA include " '[a]ll disputes between a carrier or carriers and its or their *employees*....' " *Daniels,* 916 F.2d at 570 (quoting 45 U.S.C. § 152 Second) (emphasis in original). Appellants contend that because RLA preemption applies only to employees, it does not apply to those appellants who are spouses of employees and are not employees themselves. Appellees argue that the spouses' claims are entirely derivative of the employees' claims, and so the spouses claims are also preempted.

The spouses would have an independent action against BN if they could show, *inter alia,* that BN knowingly made a false representation to them, that BN intended that they rely on the false representation, that they had a right to rely on it, that they did so rely, and that they suffered damage as a result of that reliance. *See Wiberg v. 17 Bar, Inc.,* 241 Mont. 490, 788 P.2d 292, 295 (Mont.1990) (outlining the requirements for proving fraud under Montana law). By contrast, the spouse-appellants' claims are derivative if it was only the employees who relied on the promises, and if the spouses' claims are for damages they sustained when the employees lost their jobs.

The complaint alleged various types of damages, including "family separations and loss of jobs, homes, property, opportunity, security and emotional stability, in addition to losing their opportunity to object to the mergers and/or foundation of the holding company." The complaint fails to show any way in which the spouses were damaged as a result of their own independent reliance on BN's alleged promises, with the possible exception of losing the opportunity to object to the mergers. Rather, the claims of the spouses are based on damages they suffered because the employees lost their jobs. Therefore, those claims are derivative of the employees' claims, and the district court's jurisdiction over those claims was preempted by the RLA to the same extent it was preempted for the employees' claims. To the extent that the spouse appellants seek to show independent reliance based on giving up

their opportunities to object to the mergers, that claim is preempted by the jurisdiction of the Interstate Commerce Commission, as discussed below.

We find no other allegations in the complaint of independent reliance by the spouses. Therefore, we dismiss the action of the spouse appellants for failure to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6).

### C. *Statutory Claim*

■ The district court refused to allow appellants to file a third amended complaint, in which appellants sought to add a claim based on section 69–14–1002 of the Montana Code. This statute provides that if a railroad company operating in Montana moves a division point or terminal, it shall be liable "to any employee of such railroad or railway company for any damage sustained by such employee by reason of any decrease in value of any real property actually occupied by such employee as his place of residence, which decrease in value shall be caused by reason of the removal of such division point or terminal...." Mont.Code Ann. § 69–14–1002 (1989). Appellants filed their original complaint based on the railroad's closure of shops located in Livingston. After appellants had filed this complaint, the railroad allegedly took the further step of closing the Livingston terminal. At that point, appellants sought to amend their complaint to state a claim under the Montana statute.

Appellees argue that this claim is preempted, because "[n]o sense can be made of the statutory terms 'division point' or 'terminal' without reference to the collective bargaining agreement." However, the collective bargaining agreement is not relevant to this claim. The claim is based on the terms of the statute. The coverage of the statute would depend on the statute's definition of a "terminal," not the CBA's. Appellees have not made any other argument about why the statutory claim should be preempted, nor have we found any basis for preemption based on our review of the 1964 collective bargaining agreement.

The agreement states that the purpose of the section on employee protection is "to afford protective benefits for employees who are displaced or deprived of employment as a result of changes in the operations of the carrier...." The agreement nowhere states that the protections stated in the CBA are exclusive of any protections that might be provided under state law or that employees have agreed to give up any protections to which they are entitled under state law. Indeed, statutes often provide protections for employees beyond those provided in CBAs. *See, e.g., Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (holding that petitioner's remedy under Title VII of the Civil Rights Act was in addition to remedies available under the collective bargaining agreement in force between his employer and his union). The fact that a CBA provides some particular protections is not relevant to a claim based on a totally different type of protection afforded under a statute.

■ Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment. *Kelson v. City of Springfield,* 767 F.2d 651 (9th Cir.1985). Appellants have stated a cause of action pursuant to the Montana statute, and the amendment should have been permitted. If the statute is invalid as a burden on commerce, or is subject to some other defense, those questions can be resolved in the trial court.

### D. *Status of Holding Company*

■ Finally, appellants contend that because of BNI's status as a holding company, BNI is not a railroad carrier subject to the provisions of the Railway Labor Act, including RLA preemption. If BNI is merely a holding company, then appellants have failed to explain how BNI caused the closure of the Livingston facilities and have sued the wrong defendant.

### II. Interstate Commerce Act Preemption

BN argues, in the alternative, that appellant' claims are preempted under the Inter-

state Commerce Act (ICA), 49 U.S.C. §§ 10101–11917 (1988). Because the district court found all claims to be preempted by the RLA, it did not reach this issue, and appellants declined to address the issue of ICA preemption in their briefs.

Because we hold that one of appellants' claims is not preempted by the RLA, and because we may affirm on any ground finding support in the record, *see Smith v. Block*, 784 F.2d at 996 n. 4, we turn to the issue of ICA preemption.

■ A railroad carrier may not merge with another carrier without the approval and authorization of the ICC. 49 U.S.C. § 11343(a)(1) (1988); *Kraus v. Santa Fe Southern Pacific Co.*, 878 F.2d 1193, 1197 (9th Cir.1989), *cert. dismissed,* — U.S. ——, 110 S.Ct. 1329, 107 L.Ed.2d 850 (1990). The Interstate Commerce Commission has exclusive jurisdiction over such mergers. 49 U.S.C. § 11341(a) (1988). It is undisputed that the ICC approved both mergers at issue here.

In their second amended complaint, appellants alleged that BN officials made public assurances that the Livingston railroad facilities would never close if the 1970 and the BNRC–St. Louis/San Francisco Railway Company mergers were approved. Appellants further alleged that the 1970 merger was approved as a direct result of these promises. Finally, appellants alleged that BN was under a continuing duty to disclose to appellants the effect of the proposed mergers on railroad facilities in Livingston.

The complaint alleged that the plaintiffs, including the spouse plaintiffs, lost their opportunity to object to the mergers because of their reliance on the railroad's promises. To the extent that appellants' claims stem from alleged fraud in connection with the ICC's approval of the mergers, the ICC has exclusive jurisdiction. *Kraus*, 878 F.2d at 1198 (district court lacked jurisdiction over plaintiff railroad employees' claims arising out of allegedly unauthorized merger because ICC has exclusive jurisdiction over enforcement of the merger provisions of the ICA). Thus, the spouse appellants cannot establish jurisdiction based on a claim that they independently relied on BN's promises by giving up their opportunities to object to the mergers.

■ On the other hand, to the extent that violation of ICA merger provisions is not an essential element of appellants' state law claims, these claims are not barred. *Id.* at 1199–1200. Appellants' claim under the Montana statute has no connection with violation of any provisions of a merger. The statute provides that employees should be compensated for the loss in value of their homes any time a railroad closes a terminal in the state, regardless of the reason for the closure. Appellants do not need to show any wrongdoing on the part of the railroad to recover under this statute, and arguments regarding approval of the merger have no relevance to this claim. Thus, this claim is not preempted by jurisdiction of the ICC.

### CONCLUSION

Appellants' should be permitted to amend their complaint to state a cause of action under section 69–14–1002 of the Montana Code. We affirm the judgment dismissing appellants' other claims. Each party will pay its own costs on this appeal.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.