**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 14 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RYAN COUCH; KENNETH JIMENEZ;
BARNABE TORRES,

      Plaintiffs - Appellants,

 v.

MATTHEW CATE; DAVID SHAW;
JEANNE S. WOODFORD; JOHN
DOVEY; SCOTT KERNAN; MARTIN
HOSHINO; TOMMY WAN; KIMBERLI
BONCORE; RALPH DIAZ; KENNETH
CLARK; KATHY ALLISON; JACK
HUTCHINS,

      Defendants - Appellees.

No. 09-15599

D.C. No. 1:08-cv-01621-LJO-DLB

MEMORANDUM [*]

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted February 12, 2010
San Francisco, California

---

    [*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: HALL, McKEOWN, Circuit Judges, and ZILLY,[**] Senior District Judge.

Officers Couch, Jimenez, and Torres, all corrections officers at the California Department of Corrections and Rehabilitation ("CDCR"), appeal from the district court's Rule 12(b)(6) dismissal of their two causes of action under 42 U.S.C. § 1983 and their private civil cause of action under 18 U.S.C. § 1964(c) of the Racketeer-Influenced Corrupt Organizations Act ("RICO") against twelve defendants,[1] all employees in either the CDCR prison management or the California Office of the Inspector General. We affirm in part and reverse and remand in part.[2]

## I. SECTION 1983 FIRST AMENDMENT CLAIMS

We affirm the district court's dismissal with prejudice of Couch's and Jimenez's § 1983 First Amendment claims against all defendants other than Investigator Boncore and Associate Warden Diaz. As to Couch's and Jimenez's

---

[**] The Honorable Thomas S. Zilly, Senior United States District Judge for the Western District of Washington, sitting by designation.

[1] Couch and Jimenez's § 1983 free speech retaliation claims against Associate Warden Tommy Wan survived the defendants' motion to dismiss and is not at issue in this appeal.

[2] We agree with the district court that the Eleventh Amendment does not bar relief as to any of the claims asserted by Couch, Jimenez, or Torres.

§ 1983 First Amendment claims against Boncore and Diaz, we reverse the dismissal with prejudice and remand with instructions to grant leave to amend.

None of the parties discussed a seminal Supreme Court case limiting First Amendment protection for public employees, nor did any address subsequent Ninth Circuit cases discussing this limitation. See Garcetti v. Ceballos, 547 U.S. 410 (2006); see, e.g., Eng v. Cooley, 552 F.3d 1062 (9th Cir. 2009); Robinson v. York, 566 F.3d 817 (9th Cir. 2009); Posey v. Lake Pend Oreille School Dist. No. 84, 546 F.3d 1121 (9th Cir. 2008); Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006). As the Supreme Court stated in Ceballos, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Ceballos, 547 U.S. at 421.

On the face of the complaint, there are insufficient facts to ascertain the scope of Couch's and Jimenez's official duties as correctional officers and whether they made the various statements in their capacity as private citizens or public employees under Ceballos. To satisfy this step of the inquiry against a motion to dismiss, Couch and Jimenez would have to plead the official responsibilities of a correctional officer and identify the speech that they made in their capacities as private citizens (i.e., outside their official duties). Because Couch and Jimenez

3

might be able to allege facts that could cure this deficiency, dismissal of their claims against Boncore and Diaz without leave to amend was improper.  Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1472 (9th Cir. 1991).[3]

It is well settled that the state may not retaliate against its employees for asserting "First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest."  Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).  Even though Boncore, as a correctional officer, may not herself have the supervisory authority to effect an employment action such as a transfer, Couch and Jimenez's pleading of the facts indicates that Boncore "was

---

[3] The three plaintiffs did not request leave to amend the complaint at the motion to dismiss phase, and the district court preemptively stated it would not grant any attempt to do so.  While the denial of leave to amend is reviewed for abuse of discretion, we have consistently held that "requests for leave should be granted with 'extreme liberality.'"  Moss v. U.S. Secret Service, 572 F.3d 962, 972 (9th Cir. 2009) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990)).  Leave to amend should be granted unless upon de novo review, it is apparent that an amendment would not save the complaint.  Polich, 942 F.2d at 1472.  Although our holding in Alaska v. United States, suggests that absent certain circumstances, "where a party did not seek leave to amend a pleading in the lower court, we would not remand with instructions to grant leave to amend," 201 F.3d 1154, 1163 (9th Cir. 2000), we also stated in Lee v. City of Los Angeles, that "we will uphold a sua sponte dismissal without leave to amend only where the plaintiff cannot possibly win relief." 250 F.3d 668, 683 n.7 (9th Cir. 2001) (internal quotation marks and citation omitted).  Here, the plaintiffs did not allege, and the district court did not apply, the Ceballos rule on speech by public officials protected by the First Amendment.  The district court's statement that it would deny leave to amend was understandably not linked to the plausibility of plaintiffs' claims under Ceballos.

4

assigned to lead the ISU [Investigative Services Unit] team," and thus she did have some supervisory authority over the two officers, both of whom worked in the ISU.

Couch and Jimenez may also be able to plead facts to support their retaliation claims against Diaz. Couch and Jimenez allege that Diaz, in contravention of normal policy, instructed Couch to show an accused peacekeeper evidence implicating him in a conspiracy to commit murder, resulting in a threat on Couch's life. They also allege that Diaz told another officer that Couch and Jimenez were removed for "doing their own investigations," which they understood to mean that Associate Wardens Diaz and Wan decided to remove them for prosecuting peacekeepers. These two potential adverse employment actions, combined with Diaz's statement to Jimenez that he "didn't like" the presence of federal officers at the prison, with whom Couch and Jimenez were cooperating, constitute a plausible allegation that Diaz personally retaliated against the two officers for their protected speech.

These alleged adverse employment actions are only cognizable, however, if they were done in retaliation for *protected* speech under Ceballos. Because amendment of the First Amendment claims might not be futile with respect Boncore and Diaz, we remand with instructions to allow leave to amend as to those two defendants.

5

However, dismissal was proper against Matthew Cate, David Shaw, Jeanne Woodford, John Dovey, Scott Kernan, Martin Hoshino, Kenneth Clark, Kathy Allison, and Jack Hutchins. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). In pleading facts to suggest each defendant's liability, Couch's and Jimenez's allegations must be more than "'merely consistent with' a defendant's liability," but rather, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Couch and Jimenez claim that Cate, Woodford, Dovey, Kernan, Hoshino, Clark, Allison,[4] and Hutchins are liable based on supervisory liability, and that each of these eight defendants plus Shaw are also liable because they each "conspired with Defendant Wan and with each other to commit and cover up potentially criminal conduct and violations of Couch's and Jimenez's civil rights." In a § 1983 claim, "a supervisor is liable for the acts of his subordinates 'if the

[4] Couch and Jimenez also claim that Allison and Clark are liable for First Amendment retaliation based on their personal conduct. Because they cannot allege facts that could plausibly state a claim on this basis, we affirm the district court's dismissal of this claim against Allison and Clark on this liability theory with no further comment.

6

supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). To show a conspiracy between the defendants under § 1983, plaintiffs must allege "an agreement or 'meeting of the minds' to violate constitutional rights." United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (quoting Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Id.

Couch and Jimenez allege that because Cate, Woodford, Dovey, Kernan, Hoshino, Clark, Allison, and Hutchins are in the command chain, they authorized or should have known about the actions of Wan, Boncore, and Diaz. Although they allege a few other facts, Couch and Jimenez have not shown that they can allege sufficient facts to create a plausible inference that these defendants are liable in their supervisory capacity for constitutional violations against Couch and Jimenez. Similarly, Couch and Jimenez cannot allege sufficient facts to indicate plausibly that any of these eight defendants or Shaw conspired to violate their First Amendment free speech rights. The district court therefore properly dismissed

7

Couch's and Jimenez's First Amendment claims against Cate, Shaw, Woodford, Dovey, Kernan, Hoshino, Clark, Allison, and Hutchins.

## II. SECTION 1983 DUE PROCESS CLAIMS

The district court properly dismissed Couch's and Jimenez's § 1983 due process claims, because they could not plausibly allege that they had a protected liberty or property interest. We have recognized that a liberty interest is implicated if a charge leveled by the government against an individual impairs that person's reputation for honesty or morality. Vanelli v. Reynolds Sch. Dist. No. 7, 667 F.2d 773, 777-78 (9th Cir. 1982). To establish a protected liberty interest under Vanelli, Couch and Jimenez must establish, *inter alia*, that some public disclosure has been or will be made of their allegedly stigmatizing transfers out of the ISU. Id.; see also Guzman v. Shewry, 552 F.3d 941, 955 (9th Cir. 2009). Self-reporting by Couch and Jimenez by answering questions on California's standard application form, for example, does not constitute public disclosure for purposes of Vanelli. Guzman, 552 F.3d at 957. Other than such self-reporting, Couch and Jimenez have pleaded no facts suggesting that the allegedly stigmatizing information has been or will be published. Indeed, under California law, any documents memorializing the transfers or alleged demotions would be exempt from a public records disclosure request. See CAL. GOV'T CODE § 6254(c) & (k); CAL. PENAL CODE §§ 832.7(a) &

8

832.8(d) & (e); see also Comm'n on Peace Officer Standards & Training v. Superior Court, 165 P.3d 462, 467-68 (Cal. 2007). Nor do the transfers out of ISU give rise to a property-based due process claim. Couch and Jimenez have not shown that they were entitled to a specific position or that they were entitled to remain in ISU, and their transfers were not accompanied by any decrease in salary or benefits. See Stiesberg. v. California, 80 F.3d 353, 357(9th Cir. 1996). We affirm the district court's dismissal of Couch's and Jimenez's due process claims against all defendants and thus have no occasion to analyze whether the defendants also have qualified immunity as to the due process claims.

## III. RICO CLAIMS

All three officers sue all twelve defendants in their personal capacities for injuries to business and property under RICO § 1964(c), which provides a private civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Section 1962, in turn, contains the criminal provisions of the statute, and Couch, Jimenez, and Torres allege violations under §§ 1962(b), (c), and (d). We affirm the district court's dismissal of Torres's RICO claim against all defendants, and affirm the district court's dismissal of Couch's and Jimenez's RICO claims against all defendants except Wan, Boncore, and Diaz.

9

As an initial matter, we affirm the district court's dismissal of the officers' § 1962(b) claims against all defendants, because the officers do not allege or even make any mention of facts or arguments that suggest that defendants engaged in "a pattern of racketeering activity" in order to "acquire or maintain, directly or indirectly, any interest in or control of" the enterprise. 18 U.S.C. § 1962(b).

Under RICO, a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). In order to survive the motion to dismiss, each of the officers must show that the defendants' conduct was the proximate cause of that injury. Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992). The Supreme Court recently clarified that this proximate cause requires "'some *direct relation* between the injury asserted and the injurious conduct alleged'" and explicitly rejected forseeability as a standard for determining proximate causation. Hemi Group, LLC v. City of New York, — U.S. —, 130 S. Ct. 983, 989, 991 (2010) (quoting Holmes, 503 U.S. at 268) (emphasis added). The decision in Hemi Group was announced after briefing in this case and less than a week before oral argument. The officers argued in their complaint and briefs that their injuries were a foreseeable result of the defendants' predicate acts, thus establishing standing. In

10

doing so, they relied on Diaz v. Gates, which states that the "proximate cause standard . . . is generous enough to include the unintended, though foreseeable consequences of RICO predicate acts." 420 F.3d 897, 901 (9th Cir. 2005). However, Hemi Group definitively foreclosed RICO liability for consequences that are only foreseeable without some direct relationship. Hemi Group, 130 S. Ct. at 991. Each officer must allege that the RICO predicate acts of obstruction of justice in violation of 18 U.S.C. §§ 1512(b)(3), (c)(1), and (d)(1)-(4) are the proximate, and not just foreseeable, causes of the officers' injuries.

There are no facts that Torres could allege to state a claim that the defendants' commission of RICO predicate acts had a *direct* relationship to his alleged injuries, including stress, need for psychiatric care, and resulting interference with his ability to pursue contractual relations. The link between the defendants' alleged predicate acts and Torres's resulting injuries is far too attenuated to confer standing, and we therefore affirm the district court's dismissal of Torres's RICO claim against all defendants. Hemi Group, 130 S. Ct. 983, 989 ("Because [the plaintiff's] theory of causation requires us to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement."). In addition, Torres's injuries are more akin to personal injuries that are not cognizable under RICO. Diaz, 420 F.3d at 900.

11

Our de novo analysis indicates that Couch and Jimenez might be able to allege facts establishing a direct relation between their injuries and some of the defendants' predicate acts.[5] For example, the transfer of Couch to a different facility and the allegation that Wan, Boncore, and Diaz effected this transfer to prevent him from pursuing high profile peacekeepers suggests a direct relationship between Couch's injury and racketeering activity in violation of § 1512(b)(3). Likewise, Jimenez's transfer to a different facility and the allegation that this transfer was in retaliation for his concerns about an investigation of the murder of an inmate also suggests a direct relationship between his injury and racketeering activity in violation of § 1512(b)(3). Because dismissal without leave to amend is improper unless "the complaint could not be saved by any amendment," Polich, 942 F.2d at 1472, and because amendment of Couch's and Jimenez's RICO claims might not be futile with respect to Wan, Boncore, and Diaz, we reverse and remand Couch's and Jimenez's RICO claims with instructions to allow leave to amend to

---

[5] It is possible that Couch and Jimenez may not be able to establish the requisite injury under our en banc decision in Diaz, 420 F.3d at 900. Although we recognized in Diaz that our decision articulates a more expansive theory of RICO liability for employment-related losses, we expressly noted that our holding did not create unlimited standing for loss of wages. Id. at 901. Because we reverse and remand with respect to proximate cause under Hemi Group, we leave for another day whether Couch and Jimenez allege sufficient injury under Diaz.

12

allege facts establishing proximate cause Hemi Group, but only as to these three defendants.

Dismissal was proper against Cate, Shaw, Woodford, Dovey, Kernan, Hoshino, Allison, Clark, and Hutchins because the officers allege insufficient facts that these defendants themselves committed predicate offenses under § 1962(c). The officers also allege that the defendants "knowingly and willfully conspired . . . to engage in the violation" of § 1962(c) and that each "aided and abetted, and was the co-conspirator of, each of the others and was at all times acting, and did act, in furtherance of, and with full knowledge of, the unlawful purposes of such conspiracy." However, "[t]o establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000). The officers' RICO conspiracy claims fail as to most of the defendants, because they allege insufficient facts to demonstrate an agreement to violate RICO or a predicate statute by any of the defendants except Wan, Boncore, and Diaz.

IV. **CONCLUSION**

In summary, we affirm the district court's dismissal of Couch's and Jimenez's § 1983 First Amendment claims against Cate, Shaw, Woodford, Dovey,

13

Kernan, Hoshino, Clark, Allison, and Hutchins.  We reverse the dismissal of Couch's and Jimenez's § 1983 First Amendment claims against Boncore and Diaz and remand for leave to amend in light of Ceballos.  We affirm the district court's dismissal of  Couch's and Jimenez's § 1983 due process claims against all defendants.  Finally, we affirm the district court's dismissal of Torres's RICO claim against all defendants.  We affirm the district court's dismissal of Couch's and Jimenez's RICO claims against Cate, Shaw, Woodford, Dovey, Kernan, Hoshino, Clark, Allison, and Hutchins.  We reverse the dismissal of Couch's and Jimenez's RICO claims against Wan, Boncore, and Diaz and remand for leave to amend in light of Hemi Group.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS**.  All parties shall bear their own costs on appeal.