**EDUCATIONAL TESTING
SERVICE, Plaintiff,**

v.

**Marilyn K. SIMON, Scott Bornstein,
and Best–Prep, Defendants.**

**No. CV 97 7237 CBM (RZx).**

United States District Court,
C.D. California.

April 12, 1999.

Thomas P. Olson (Wilmer, Cutler & Pickering), Washington, DC, for Plaintiff.

Carl R. Stevens and Addison K. Adams (Stevens & Kramer), Irvine, CA, and Mitchell Kamarck (Rosenfeld, Meyer & Susman), Beverly Hills, CA, for Defendants.

## AMENDED [PROPOSED] ORDER AND PERMANENT INJUNCTION

CONSUELO BLAND MARSHALL, District Judge.

Based on the submission of the parties relating to Plaintiff's motion for summary judgment, the Court hereby makes the following findings of fact and conclusions of law:

### A. FINDINGS OF FACT

1. Plaintiff ETS is a nonprofit educational corporation, chartered under New York law, that develops and administers standardized tests, including the MSAT. Declaration of Charlotte Solomon, attached to Plaintiffs' Memorandum in Support of Preliminary Injunction ("Original Solomon Decl."), ¶ 2.

2. The MSAT is a two-part examination consisting of multiple choice and essay questions that test general knowledge and skills that an elementary school teacher should possess in areas such as math, science, art, literature, and physical education. *Id.* The MSAT essay section contains approximately 18 to 20 questions. ETS currently offers the MSAT four times per year. *Id.*

3. The MSAT is relied on by the California Commission on Teacher Credentialing ("CCTC")—the state entity responsible for licensing teachers in the state of California—in determining who may teach children in California's kindergarten through sixth grade public school classrooms. *Id.*

4. First drafts of MSAT essay questions fall into two categories: (a) those developed by ETS employees within the scope of their employment and (b) those developed by individuals who are not ETS employees pursuant to a written contract stating that they are "works for hire" (*i.e.*, in which ETS owns the copyright), and that ETS will be the exclusive owner of all rights in the items. Supplemental Declaration of Charlotte Solomon, attached to Plaintiffs' Reply Memorandum in Support of Preliminary Injunction ("Solomon Reply Decl."), ¶ 3.

5. ETS invests substantial effort in developing MSAT questions and test forms. Original Solomon Decl., ¶ 2.

6. Each draft question undergoes rigorous reviews and analyses, including an extensive sensitivity review process designed to eliminate language or content that might offend or otherwise be inappropriate for a subgroup of the test-taking population, and each is "pretested" with the relevant population to ensure that it functions properly before being included in a test. *Id.* at ¶ 6. In some cases, test questions are revised based on the results of pretesting. *Id.*

7. Once the questions are finalized, ETS expends further time and resources

in compiling them into test forms and ensuring that the combination of questions on each form tests the correct balance of subject areas and represents the appropriate level of difficulty. *Id.* at ¶ 7.

8. ETS must also create scoring guides and training to score each question. *Id.*

9. As is common (and necessary) practice in the standardized testing industry, ETS sometimes reuses MSAT test forms and test questions from administration to administration. *See Educational Testing Serv. v. Katzman,* 793 F.2d 533, 544 (3d Cir.1986) (ability to reuse SAT and Achievement Test questions and forms is " 'central to the essence of plaintiff's operations' "); *Association of Am. Med. Colleges v. Mikaelian,* 571 F.Supp. 144 (E.D.Pa.1983) (reuse of Medical College Admission Test forms), *aff'd mem.,* 734 F.2d 3 (3d Cir.1984); *Educational Testing Service v. Miller,* 1991 Copr. L. Dec. ¶ 26,-811, 21 U.S.P.Q.2d 1467, 1991 WL 212181 (D.D.C.1991) ("the 1988 Foreign Service Exam contained 41 questions that appeared in the 1987 Exam").

10. The reasons for reuse of MSAT test forms and questions include equating (*i.e.,* ensuring that the same score on different forms of the MSAT has the same meaning) and cost reduction. Original Solomon Decl., ¶ 2.

11. ETS registers its MSAT test forms with the U.S. Copyright Office under special procedures for "secure tests," which ensure that security of the tests will not be jeopardized by making them available to the public. 37 C.F.R. § 202.20(c)(vi) (1999).

12. The agreement between ETS and the California Commission on Teacher Credentialing—the entity for whom ETS administers the MSAT examination—specifies that "all test questions, test forms, and related test materials ... that are developed or provided by ETS ... shall be owned and copyrighted by ETS." CCTC Agreement (attached as Exhibit C to Solomon Reply Decl.), at 12.

13. Since approximately 1982 or 1983, defendants Simon and Bornstein have jointly offered test preparation seminars under the name "Best–Prep" (*see* Deposition of Scott J. Bornstein, excerpts attached as Exhibit A to the Declaration of Thomas Olson submitted with Plaintiff's Memorandum in Support of Summary Judgment ("Bornstein Dep. Tr."), at 9), and, since approximately 1994, they have jointly offered preparation courses specifically aimed at preparation for the MSAT examination, *see* Bornstein Dep. Tr. at 69. *See also* Best–Prep Course Announcements, attached as Exhibit A to the Declaration of Thomas Olson submitted with Plaintiff's Memorandum in Support of Preliminary Injunction ("Olson P.I. Decl."), at B000780–784, B000348, B000738 (listing Simon and Bornstein as principals of Best–Prep); Letter from Patti Yee, National University, to Scott Bornstein, Aug. 14, 1996 (Olson P.I. Decl. Exh. A), at B000796 ("I am very excited to have *you and Marilyn* here on site to do these prep courses"); Letter from Scott Bornstein to Steve Brandick, Jan. 17, 1997 (Olson P.I. Decl. Exh. A), at B000797 ("*Dr. Simon and I* would be very pleased to work with you in providing *our* MSAT program to your students . . . . The instruction is conducted *personally by Dr. Simon and myself* . . . . "); Agreement to Teach, UC–Riverside, with Marilyn Simon (1997) (Olson P.I. Decl. Exh. A), at S00234 ("The *team of Scott J. Bornstein and Marilyn K. Simon, co-founders of Best–Prep,* conducts test preparation for UC campuses as well as 28 school districts in seven states."); Letter from Scott J. Bornstein, Co–Founder, Best–Prep, to Alan Crawford, Cal State Universities, Sept. 3, 1997 (Olson P.I. Decl. Exh. A), at B000802 ("*Dr. Simon and I* would be very pleased to work with you in providing *our* MSAT program ... It is our understanding that *Best–Prep* will be paid a per person basis of $117.50 for the first 50 students and $65 for each additional student thereafter."); Amendment to Personal Services Contract Between Los An-

geles Unified School District and Best–Prep (Olson P.I. Decl. Exh. A), at B000804 (listing Bornstein's home address for Best–Prep) (emphasis added in each case).

14. Simon and Bornstein are co-founders of Best–Prep. Although Simon prepared all of the written materials containing the questions, they sell their services as a combined package, share the revenues from their common efforts, and carefully coordinate their MSAT preparation activities as a unified "team." *See* Bornstein Dep. Tr. 78 (coordination of teaching activities); Deposition of Marilyn K. Simon, excerpts attached as Exhibit B to Olson Decl. submitted with Plaintiff's Memorandum in Support of Summary Judgment ("Simon Dep. Tr."), 53–58 (agreement regarding division of income); *id.* at 36 (Simon and Bornstein have signature authority on Best–Prep bank account). *See also* Best–Prep Course Announcements (Olson P.I. Decl. Exh. A), at B000781 (describing Bornstein as "co-founder" of "Best–Prep"); Bornstein Biography (Olson P.I. Decl. Exh. A), at B000778 (same).

15. Between 1995 to 1997, Simon, Bornstein, and/ or Best–Prep entered into approximately twenty-five contracts with universities and other clients to provide their joint MSAT preparation course. Bornstein Dep. Tr. 75.

16. Part of defendants' course materials consists of a workbook containing a section entitled "MSAT—Hot Questions" or "Hot Essay Q & A á la MSAT." Declaration of Gregory Avak, attached to Plaintiff's Memorandum in Support of Preliminary Injunction ("Avak Decl."), ¶ 3; Original Solomon Decl., ¶ ¶ 3–4 & Exhs. B & C. These questions are substantially similar to actual MSAT questions that may be used again and which were obtained from former students who have recently taken the MSAT. Avak Decl., ¶ 3; Declaration of Anthony T. Di-Bari, attached to Plaintiffs' Reply Memorandum in Support of Preliminary Injunction ("DiBari Decl."), ¶ 3. Defendants also provide students with sample answers to the MSAT questions that they learn of from their students.

17. Defendants learn of MSAT questions used on past exams relayed to them by students who have recently taken the MSAT exam. *See* Bornstein Dep. Tr. 126, 127; Simon Dep. Tr. at 200 ("During the course, students will share what they remember from the test."); *id.* at 211–12 (Q: "Your students, over and over and over again, from 1992 to the present, have told you, to the best of their recollection, the—the nature and the form and the substance of the questions on the actual MSAT, have they not?" A: "Students have talked about what was on the test, yes."); *id.* at 212–13 (Q: "Have your students ever ... told you in writing what the subject matter was on any question or questions on the MSAT?" A: "I believe so."); *id.* at 213–14 (when asked for a best estimate regarding the number of times Simon received written information with respect to the subject matter of the MSAT, responding "I would say that happens frequently,"); *id.* at 216 ("Students would provide me frequently with written information saying that the hurricane question was on the test."); *id.* at 321 (admitting that Simon told class that she obtained test questions from students who recalled questions by using their memory).

18. Defendants compile the questions relayed to them by students—along with defendants' proposed answers—and give them to persons planning to take the MSAT who enroll in the Best–Prep MSAT course. *See, e.g.,* DiBari Decl. at ¶ 3; Avak Decl. ¶ 3.

19. Defendants were aware that ETS reuses questions from one test administration to another. *See* Simon Dep. Tr. 250–51; Bornstein Dep. Tr. 138–139.

20. Defendants tell their students that their "practice" MSAT questions are derived from actual MSAT forms. Simon Dep. Tr. at 317; Avak Decl., ¶ 3; DiBari Decl. ¶ 3 ("During the MSAT preparation course, Dr. Simon told the class that we

could expect to see questions on the real test that would be similar to those in the Best–Prep course materials.").

21. Defendants tell their students that they "could expect to see questions on the real test that would be similar to those in the Best–Prep course materials." DiBari Decl. ¶ 3; *see also* Simon Dep. Tr. at 328 (Q: ". . . 'Dr. Simon told the class that we could expect to see questions on the real test that would be similar to those in the Best–Prep course materials.' You tell just about every class that; right?" A: "That's probably correct, yes."); *id.* at 321–322.

22. Although defendant Simon was primarily responsible for producing various versions of the Best–Prep workbook, Bornstein Dep. Tr. at 77, defendant Bornstein has reviewed the workbook, *id.* at 80–81, has on several occasions been involved in duplicating, collating, and distributing the workbook to course participants, *id.* at 149–150, the workbooks were used in the joint Best–Prep preparation courses, *id.* at 78, and defendant Bornstein used the information in the workbooks to create his own written materials, *id.* at 82–83, 88.

23. Defendant Bornstein on multiple occasions relayed to defendant Simon information students related voluntarily to him regarding what questions were on the actual MSAT examination. *Id.* at 130–31. Bornstein admits that Best–Prep students have told him that the questions in the workbook look like questions that have appeared on the ETS MSAT examination. *Id.* at 128–29.

24. Defendants update their course materials regularly to add new, revised, sample questions they have created from questions provided by students in subsequent MSAT administrations. Simon Answer ¶ 11 (admitting updating to include new material); Original Solomon Decl., Exhs. B & C (new questions appear in later version of workbook).

25. Defendants provide charts (prepared by defendant Bornstein) designed to call to mind defendants' "Hot Questions."

*Compare* Original Solomon Decl., Exh. B ("practice" MSAT questions) *with* Olson P.I. Decl., Exh. B (Question Charts, B000341–347); *see also* Bornstein handout (Olson P.I. Decl. Exh. A), at B00754 ("Now that you are ready to master the general concepts and content of the essay (and by extension—content knowledge) material in Marilyn's handout, here is a guide to using your memory systems in accelerating your comprehension."). These charts, like the defendants' workbook, are updated to reflect new questions the defendants obtain from students.

26. Between 600 to 700 students have taken the Best–Prep MSAT course since 1994. Bornstein Dep. Tr. 119. Approximately 2,500 students have taken an MSAT course from defendant Simon—whether through Best–Prep or not—since 1992. Simon Dep Tr. 105.

27. As a result of the defendants' practices, administration of the MSAT examination was, and is, jeopardized, resulting in ETS being forced to eliminate some of its questions and revise other questions as well as some of its examination forms. Original Solomon Decl. ¶ 5.

28. ETS learned of defendants' practices shortly before the May, 1997 MSAT administration. *Id.* at ¶ 3. ETS officials were then forced to prepare and administer, on an emergency basis, a new MSAT form that (to the best of ETS's knowledge) did not contain questions copied by defendants. *Id.* at ¶ 5. ETS was also forced to conduct a similar revision of MSAT forms it had planned to use in subsequent administrations, including the July and October 1997 and the February 1998 MSAT administration. *Id.* In short, as ETS official Charlotte Solomon explains, "defendants' copying of 'live' MSAT questions has forced ETS to make extraordinary and extremely burdensome efforts to try to undo the effects of defendants' copying." *Id.*

29. If defendants are not permanently enjoined from copying ETS's copyrighted

test questions and forms, ETS faces the possibility of having to write new questions and undergo similar overhauls of its test forms and questions in the future, and it is likely that defendants' customers will enjoy an unfair advantage over other test-takers. *Id.* at ¶ 6.

30. The impact on ETS (and on other test-takers) of such activities by defendants would be extremely disruptive, and would injure ETS in ways that would be difficult, if not impossible, to quantify. *Id.*

## B. CONCLUSIONS OF LAW

31. Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

32. To prove copyright infringement, it is sufficient to show (1) plaintiff's ownership of the copyright and (2) defendant's copying of protected material. *See, e.g., North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir.1992); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977).

■ 33. There is no need to prove anything about a defendant's mental state to establish copyright infringement; it is a strict liability tort.

■ 34. The Copyright Act provides that ownership of copyright is automatic once an original work (such as the MSAT forms at issue here) has been created. 17 U.S.C. § 102(a). The Act also provides that an employer such as ETS automatically owns the copyright in any work created by its own employees within the scope of their employment and in any work created by non-ETS employees for ETS, so long as those individuals have signed "work-for-hire" agreements. 17 U.S.C.A. §§ 101, 201(b) (West Supp.1998); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir.1994).

35. Because all of the questions at issue in this litigation were either created by ETS employers or were created by outside writers under work-for-hire agreements, *see* Solomon Reply Decl. ¶ 4, ETS owns the copyright in each of the questions. *See Katzman,* 793 F.2d at 539; *ETS v. Miller,* 1991 Copr. L. Dec. ¶ 26,811 ("A copyright in a compilation of questions, such as the Foreign Service Exam, includes copyright protection for the questions themselves.").

36. ETS also owns the copyright in each of its MSAT test forms. The MSAT forms were assembled by ETS employees through a variety of judgmental decisions, entitling ETS to copyrights in each form as a whole. *Id.* at ¶ 7. *See Eckes v. Card Prices Update,* 736 F.2d 859, 863 (2d Cir. 1984) (compilation copyright based on judgmental selection of items to be included in work).

37. The agreement between ETS and the California Commission on Teacher Credentialing—the entity for whom ETS administers the MSAT examination—provides additional confirmation regarding ETS's ownership of the relevant copyrights; "all test questions, test forms, and related test materials ... that are developed or provided by ETS ... shall be owned and copyrighted by ETS." CCTC Agreement, at 12.

38. ETS's ownership of copyrights in the MSAT forms and questions is further confirmed by registrations issued by the U.S. Copyright Office. *See* Original Solomon Decl., Exh. D (attaching Registration Certificates). These certificates "constitute prima facie evidence of the validity of the copyright" and of the facts stated in the certificates, including ETS' ownership of copyright in the materials. 17 U.S.C. § 410(c) (1994); *see also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1217–18 (9th Cir.1997), *cert. denied,* 523 U.S. 1021, 118 S.Ct. 1302, 140 L.Ed.2d 468 (1998); *North Coast Indus.,* 972 F.2d at 1033.

39. Sections 106(1) and 106(3) of the Copyright Act reserve to a copyright owner the exclusive right to copy and distribute his or her work.

40. Under long-established case law, ETS may demonstrate copying through proof of (1) access by the defendant to the copyrighted work and (2) substantial similarity between the plaintiff's and the defendants' works. *See, e.g., Entertainment Research Group,* 122 F.3d at 1217; *North Coast Indus.,* 972 F.2d at 1033; *Sid & Marty Krofft,* 562 F.2d at 1162.

■ 41. Defendants obtained access to ETS's copyrighted MSAT forms and questions through students who had recently taken the test and voluntarily provided this information. *See, e.g.,* Avak Decl., ¶ 3; DiBari Decl. ¶ 4; *Kamar Int'l, Inc. v. Russ Berrie & Co.,* 657 F.2d 1059, 1062 (9th Cir.1981) (" 'evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant' ") (citations omitted).

42. For purposes of determining access under the Copyright Act, it is irrelevant whether the defendants asked the students for this material or whether the students provided it unsolicited.

43. The headings and layout of defendants' materials further make clear that their "sample" questions were created through access to ETS's copyrighted questions provided orally through students who previously took the test. *See, e.g.,* Exh. C to Original Solomon Decl. (labeling section containing ETS's copyrighted questions "Hot Questions," and prefacing section with phrase "And Now For the Test. . . ."); *id.* (question stating "[a] picture of the stage in a scene from the show THE DYNAMO *is presented* . . ."); *id.* (question stating "[t]he first few lines of Dorothy Parker's 'The Waltz' *are given* . . . ").

■ 44. Substantial similarity does not require verbatim copying; a coaching school cannot escape copyright liability by claiming that its copying of secure test questions is not word-for-word. *ETS v. Katzman,* 793 F.3d at 541. Immaterial variations do not alter the conclusion that infringing material is substantially similar to copyrighted material. *Id.*

■ 45. Defendants' "Hot Questions" are substantially similar to ETS's copyrighted MSAT questions (and to ETS's test forms as a whole). *See* Olson Decl. Exh. C.

46. Defendants themselves agree that their questions are "very similar" to ETS's secure copyrighted questions. Simon Dep. Tr. at 223–23 (Q: "I asked if it was very similar." A: "They are very similar, yes."); *id.* at 205 (A: "Do I agree that they are similar? Yes."); *id.* at 207 (Q: "[D]oes your question add anything [to the ETS question]?" A: "No, sir.").

47. As shown by ETS's side-by-sides, defendants have copied the creative "heart" of each infringed question. *Harper & Row, Publishers, Inc. v. Nation Enter.,* 471 U.S. 539, 564–65, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (holding that copying of approximately 300 words from a 200,000 word manuscript was copyright infringement); *see also Katzman,* 793 F.2d at 542–43 (holding that copying of even a few test questions was sufficient to justify a preliminary injunction against copying of any ETS test).

48. Defendants have infringed plaintiff's copyrights in MSAT questions.

49. In addition to infringing ETS's copyrights in individual questions, defendants have violated ETS's copyrights in its MSAT test forms as a whole.

■ 50. The Copyright Act protects "compilations," *i.e.,* works "formed by the collection and assembling of preexisting materials or of data that are *selected,* coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101 (1994) (emphasis added).

51. As the Supreme Court has noted, while a selection must be original and creative to warrant protection, "the originality requirement is not particularly stringent.... [It] requires only that the author make the selection or arrangement independently (i.e., without copying that selection or arrangement from another work), and that it display some minimal level of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

52. ETS' selection of topics to be covered in a particular MSAT form (and of particular questions to test those topics) easily meets this standard. ETS' selection of topics for a particular test form is an exercise requiring judgment and creativity, and is therefore copyrightable. *See, e.g., Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir.1984) (plaintiff exercised "selection, creativity, and judgment" in choosing 5,000 "premium" baseball cards out of total of 18,000).

53. Defendants have copied 19 of the 22 essay questions in MSAT Form 3PNT1. *See* Olson Decl., Exh. C, pp. 1–8. This is plainly an infringement of ETS' copyrighted test form as a whole. *See Eckes*, 736 F.2d at 862–63 (copying of judgmental selection of "premium" baseball cards is an infringement).

■ 54. Section 106(2) of the Copyright Act gives the owner of a copyright the exclusive right to prepare derivative works. The Act defines a derivative work as one "based upon one or more preexisting works," such as a translation, abridgment, or condensation, "or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101 (1994).

55. To the extent that defendants have varied the form of certain of the MSAT questions they have copied, they have violated ETS' right to create derivative works based on those questions.

56. Defendants have further violated ETS' right to create derivative works by incorporating the copied questions into a new work—defendants' coaching materials—which add, among other things, suggested answers to the questions. *See Addison–Wesley Publishing Co. v. Brown*, 223 F.Supp. 219 (E.D.N.Y.1963) (enjoining publication that paraphrased the questions in plaintiff's physics textbook and provided the answers to those questions).

■ 57. In addition to their direct liability, each individual defendant is vicariously and contributorily liable under the Copyright Act for the actions of the other as part of their joint enterprise because each had a financial interest in the success of the other's teaching and in the success of "Best–Prep"—their joint business enterprise—and each had the opportunity to exercise control over their carefully coordinated, jointly marketed "team" activities. *See, e.g., Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261–64 (9th Cir.1996) (outlining elements of vicarious copyright infringement).

58. Bornstein is also contributorily liable for Simon's acts because he knew that she distributed ETS test questions and abetted her efforts by, for example, jointly marketing their coaching program and helping students to memorize copied questions. *See Fonovisa*, 76 F.3d at 264 (outlining elements of contributory copyright infringement); *Sailor Music v. IML Corp.*, 867 F.Supp. 565, 569 (E.D.Mich.1994) (partner of primary infringer liable because he "derived financial benefits" from the infringement and as a " 'general manager' was responsible for the policy of neglect which resulted in the infringement").

59. The courts have uniformly found that questions and test forms for secure examinations are subject to copyright protection if they meet the requirements of the Copyright Law. *See, e.g., Katzman*, 793 F.2d at 540 (emphasis added); *Mikaelian*, 571 F.Supp. at 150 ("the mere fact that MCAT questions refer to scientific

fact does not place these questions in the public domain..... [C]opyrights of the test questions at issue are valid.").

60. Defendants could test the same concepts without reference to or copying of ETS's copyrighted works. *See, e.g.,* Bornstein Dep. Tr. 160 ("Q: Would it be accurate to say that you felt that Best–Prep would continue to be able to offer a useful course to students even if the sample essay questions were removed from the MSAT course and workbook?" "A: Yes."); Simon Dep. Tr. 198–99 ("Q: You could use . . . an unlimited number of—of examples for teaching and testing proportions?" "A: Uh-huh.").

61. While defendants "have ample latitude and opportunity to frame noninfringing questions testing the same subjects," *Katzman,* 793 F.2d at 540, they are not free to copy the particular questions ETS has created.

■ 62. In amending the "fair use" provision of the Copyright Act in 1991, Congress went out of its way to underscore the importance of rigorous copyright protection for secure tests such as the MSAT. The Senate Report on that amendment, for example, stated that the bill was "not intended to reduce the protection of secure tests, the utility of which is especially vulnerable to unauthorized disclosure." S.Rep. No. 141, 102d Cong., 1st Sess. 6 (1991).

63. Similarly, in a statement on the Senate floor, Senator Grassley stressed that it was not Congress' intention to "weaken the very strong protection that the courts have given to an important type of copyrighted work—secure tests such as the ACT, SAT, LSAT, and MCAT." 137 Cong. Rec. S13923 (daily ed. Sept. 27, 1991). Senator Grassley went on to quote the testimony of Ralph Oman, then Register of Copyrights, who explained that:

> Secure tests are particularly vulnerable to having their utility obliterated by unauthorized disclosure. The courts have, accordingly, been particularly solicitous

in protecting these works. Indeed, so far as we are aware, the courts have never upheld a fair use claim advanced by any private entity with regard to copying of secure tests or test questions. *Id.*

64. The Third Circuit expressed a similar view in the *Katzman* case: " 'The very purpose of copyrighting the . . . questions is to prevent their use as teaching aids, since such use would confer an unfair advantage on those taking a test preparation course.' " 793 F.2d at 543 (quoting *Mikaelian,* 571 F.Supp. at 153).

65. ETS is entitled to a permanent injunction, damages, and other relief that the Court deems just for defendants' violation of ETS's exclusive rights under the Copyright Law.

66. Section 17200 of California's Business and Professions Code protects the public from "unfair competition," including business practices that are either "unlawful," "unfair," or "fraudulent." *See Podolsky v. First Healthcare Corp.,* 50 Cal. App.4th 632, 647, 58 Cal.Rptr.2d 89, 98 (1996) (noting that the statute is phrased disjunctively, such that violation of any one element of unfair competition is sufficient to justify equitable relief).

67. ETS may enforce Section 17200 of California's Business and Professions Code through a private right of action for injunctive relief and restitution. *See* Cal. Bus. & Prof.Code §§ 17203–17204 (West 1997).

■ 68. Liability under Section 17200 of California's Business and Professions Code is strict, rendering defendants' mental states irrelevant. *See State Farm Fire & Cas. Co. v. Superior Court,* 45 Cal. App.4th 1093, 1102, 53 Cal.Rptr.2d 229, 233 (1996).

■ 69. Competitive injury is not an element of the Unfair Competition cause of action. *See, e.g., Barquis v. Merchants Collection Association of Oakland, Inc.,* 7 Cal.3d 94, 109, 496 P.2d 817, 828, 101

Cal.Rptr. 745, 756 (1972). Rather, consistent with the Act's broad purposes, any person or organization may sue on its own behalf or on behalf of the public. *See, e.g., Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 215, 673 P.2d 660, 671, 197 Cal.Rptr. 783, 794 (1983) (In Bank); *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 519, 63 Cal. Rptr.2d 118, 130 (1997).

70. ETS's claim under the Unfair Competition statute is not preempted by the Copyright Act because the Act preempts only those state laws that are "equivalent to" copyright. 17 U.S.C.A. § 301 (West Supp.1998).

71. If a state cause of action (like plaintiff's state law claim here) entails "extra elements" beyond the basic elements of copyright, and protects rights that are "qualitatively different" from those protected by copyright, it survives preemption. *Valente–Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir.1989) (fraud claim not preempted) (citations omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903–904 (9th Cir.1992) (claim for improper use of airplane certification not preempted), *cert. denied*, 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993); *appeal after remand*, 132 F.3d 39 (9th Cir.1997); *National Basketball Ass'n v. Motorola Inc.*, 105 F.3d 841, 853 (2d Cir.1997) ("hot news" misappropriation not preempted because it contains extra elements).

72. Section 17200's regulation of "unlawful" business practices borrows its predicate from other California laws. A business practice that violates another statute, such as a criminal statute, is necessarily an "unlawful" business practice. *See, e.g., People v. E.W.A.P., Inc.*, 106 Cal.App.3d 315, 319, 165 Cal.Rptr. 73, 75 (1980).

73. Section 123 of the California Business and Professions Code prohibits "any conduct which subverts or attempts to subvert an licensing examination." The MSAT is a "licensing examination" within the meaning of Section 123.

74. Section 123 enumerates some, but not all, of the activities deemed unlawful under the statute, including:

- "[c]onduct which violates the security of the examination materials";
- "aiding *by any means* the unauthorized reproduction *of any portion* of the actual licensing examination"; and/ or
- "*obtaining* examination questions or other examination material, except by specific authorization *either before, during, or after* an examination."

Cal. Bus. & Prof.Code. § 123 (West 1997) (emphasis added).

75. Defendants' practice of using reconstructed MSAT questions to prepare future test-takers patently violates § 123, and thus also renders defendants liable under § 17200.

76. Defendants have violated ETS's rights under § 17200 by obtaining past MSAT examination questions from past test-takers, adding these live questions (in modified form) and sample answers into their course workbook (without ETS's authorization), making multiple copies, and then providing them to future test-takers.

77. Defendants have also violated ETS's rights under § 17200 by acting unfairly in undermining ETS's mission and by bestowing or attempting to bestow an unfair advantage on their clients in taking the MSAT.

78. Section 17200's unfairness prong is "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *State Farm*, 45 Cal. App.4th at 1103, 53 Cal.Rptr.2d at 234; *see also Barquis v. Merchants Collection Ass'n of Oakland, Inc.*, 7 Cal.3d 94, 112, 496 P.2d 817, 830, 101 Cal.Rptr. 745, 758 (1972) (In Bank); *American Philatelic Soc. v. Claibourne*, 3 Cal.2d 689, 698–99, 46 P.2d 135, 140 (1935).

79. California courts have wielded their ample discretion under the "unfairness" prong to enjoin those business practices which "offend[ ] an established public policy or ... [are] immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *People v. Casa Blanca Convalescent Homes, Inc.,* 159 Cal.App.3d 509, 530, 206 Cal.Rptr. 164, 177 (1984). This broad definition of "unfair" applies to "any practice whose harm to the victim outweighs its benefits." *Saunders v. Superior Court,* 27 Cal.App.4th 832, 839, 33 Cal.Rptr.2d 438, 441 (1994).

80. Defendants have offended California's strong public policy interests in ensuring the reliability and accuracy of score reports on standardized tests, upholding the integrity of the teaching profession, and ensuring that only qualified individuals are certified to teach in public schools.

81. The evidence for injury is overwhelming in cases involving the distribution of secure test questions. *See Katzman,* 793 F.2d at 543–44 (infringement of secure test questions would cause irreparable harm); *Mikaelian,* 571 F.Supp. at 155 ("The receipt of even a large sum of money from the defendants would not adequately compensate [plaintiff] ... for the disruption" caused by exposing test questions intended to be used in the future.).

82. "[U]se of ETS' materials by [defendants] renders the materials worthless to ETS." 793 F.2d at 543. The consequences of further copying of MSAT materials by defendants include not only further radical disruption of ETS' test development operations, but the possible cancellation of one or more MSAT administrations. Original Solomon Decl., ¶ 6. Moreover, if scores on the MSAT are cast in question, so too will be the CCTC's licensing process and the public's faith in the competence and integrity of school teachers.

83. Judges of this Court have frequently granted ETS relief against copying of secure questions by coaching schools. *See, e.g., Educational Testing Service v. Krc,* CV–91–5158–RJK (C.D.Cal. Feb. 22, 1992); *Educational Testing Service v. Sydnor,* No. CV 84–7783 (C.D.Cal. Oct. 22, 1984).

84. A plaintiff is entitled to an injunction under the California Unfair Competition statute if the "remedy is necessary 'to prevent the use or employment' of the unfair practice." *Committee on Children's Television,* 35 Cal.3d at 211, 673 P.2d at 668–69, 197 Cal.Rptr. at 791–92 (citation omitted); *see also Freeman v. Time, Inc.,* 68 F.3d 285, 288 (9th Cir.1995). ETS is entitled to an injunction under the California Unfair Competition statute.

85. Because defendants coach test-takers for several ETS exams, *see* B000782–784 (Olson P.I. Decl. Exh. A) (document on Best–Prep letterhead listing past Best–Prep workshops for the SAT, GRE, NTE, and GMAT), it is appropriate that they be enjoined from infringing or engaging in unfair competition with respect to ETS's copyrights in any of its copyrighted test questions and test forms. *See Katzman,* 793 F.2d at 544–45 (upholding preliminary injunction against infringement of any ETS test form, in case based only on copying of SAT and Achievement Test forms).

\*　　\*　　\*　　\*　　\*　　\*

In light of the above findings of fact and conclusions of law and in consideration of the entire record of this case, the Court hereby ORDERS that:

(1) Summary Judgment on all claims is entered in favor of Plaintiff Educational Testing Service.

(2) Pursuant to the Copyright Act and Fed.R.Civ.P. 65, defendants are ENJOINED from:

(a) infringing in any manner ETS's existing or future copyrights and specifically from copying, duplicating, distributing, selling, publishing, reproducing, publicly performing, displaying, preparing derivative works based on, renting, leasing, offering, or otherwise transferring or communicating in any manner, orally or in written, printed, audio, photographic, elec-

tronic, or other form, including any communication in any class or other presentation, any question from any test form copyrighted by ETS, without advance written permission of, or written license from ETS; *provided* that the distribution (*i.e.,* without copying) of voluntarily disclosed ETS test questions or forms lawfully purchased by defendants in the ordinary course of business does not violate this Injunction;

(b) debriefing or otherwise intentionally or knowingly obtaining from any person questions from any ETS test form that ETS has not voluntarily disclosed to the general public, including but not limited to any form of the PRAXIS II Multiple Subjects Assessment for Teachers ("MSAT") that ETS has not voluntarily disclosed to the general public.

(3) If defendants wish to distribute or otherwise communicate any "practice" or "sample" question or answer for any ETS examination (including but not limited to the MSAT) other than those previously provided to ETS, they shall provide such question or answer to ETS for review at least 30 days prior to distributing or communicating it. The requirements set forth in this paragraph shall expire on the third anniversary of this Permanent Injunction *provided that* defendants are in full compliance with the terms hereof.

(4) Pursuant to Cal. Bus. & Prof.Code Section 17203, F.R. Civ. P. 65, and other applicable law, defendants are ENJOINED from:

(a) providing or attempting to provide candidates for any ETS licensing examination with questions or answers derived from any MSAT or other ETS examination that ETS has not voluntarily disclosed to the general public;

(b) otherwise subverting or attempting to subvert any licensing examination, including, but not limited to, the MSAT; or

(c) obtaining licensing examination questions (including, but not limited to, MSAT questions) except by specific autho-

rization either before, during, or after an examination.

(5) Nothing in this Order shall prevent defendants from teaching general test-taking strategies that are otherwise consistent with this Order, including teaching general memorization techniques or teaching the general subject matter of areas covered by voluntarily disclosed ETS exam questions or other voluntarily disclosed ETS materials.

(6) This Order shall not prevent defendants from orally responding, in the course of face-to-face teaching, to questions spontaneously raised by students in a classroom setting if defendants have no reason to believe the questions (or defendants' answers) are based on any nondisclosed ETS question; provided that nothing in this Paragraph 6 shall limit the effect of Paragraph 2 above, other than with respect to such oral responses to questions asked in the course of face-to-face teaching.

(7) Defendants are not enjoined from teaching test preparation courses (including, but not limited to, MSAT preparation courses) in compliance with this Order.

(8) Defendants shall provide written notice to all persons who enroll in or attend their test preparation courses that ETS's exam questions are protected by copyright and that nondisclosed ETS exam questions are not permitted to be disclosed to them or by them without ETS's written authorization.

(9) This Order supersedes the Stipulated Preliminary Injunctions entered by the Court on October 16, 1997 and February 3, 1998, provided that nothing in this Order shall affect ETS's right to seek remedies for any violation of the Stipulated Preliminary Injunctions up to the date of this Order. In addition, nothing in this Order shall affect ETS's right to seek damages, attorney's fees, or other avail-

able relief for any future violation of ETS's rights.