724 F.Supp. 194 (1989)
SCORE, INC., Plaintiff,
v.
CAP CITIES/ABC, INC., Defendant.
No. 89 Civ. 6389 (GLG).
United States District Court, S.D. New York.
October 30, 1989.
*195 Handal & Morofsky, Norwalk, Conn. (Anthony H. Handal, of counsel), for plaintiff.
Patterson, Belknap, Webb & Tyler, New York City (Philip R. Forlenza, Christine H. Miller, Jeffrey M. Zimmerman, of counsel), for defendant.
GOETTEL, District Judge:

I. FACTS
Plaintiff has moved for a preliminary injunction, claiming that defendant has infringed its trademarks and trade dress in a television trivia program it produces in violation of section 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a) (1982).[1]
Plaintiff is a Delaware corporation with offices in Los Angeles, California. In 1985, plaintiff began to air a national cable television program over the Financial News Network ("FNN"). The program, known as Time Out For Trivia ("TOFT"), was a sports trivia show which aired on week-nights, sometimes twice a night.[2] The viewership is claimed to have been 100,000 people nationwide. Todd Donoho was the program's host and Eric Corwin served as its producer. TOFT's basic format involved Donoho asking questions about various sporting events and sports personalities, which were often accompanied by film footage shown on a television screen. Listeners, in turn, called the station and attempted to answer the questions in exchange for various prizes. In this respect, the show resembled the many other television and radio trivia programs in existence today.
*196 The show could not be confused, however, with a trivia show having an exclusively serious focus. This distinction stemmed in large measure from Donoho's antics. Donoho, like most other game show or talk show hosts, developed his own personality and mannerisms, which apparently contributed to the show's success.[3] For example, Donoho often poked fun at listeners and engaged in a playful repartee with his female assistant. Donoho also employed various catchphrases throughout the program, such as "Take a Hike," when a caller could not answer quickly enough or was incorrect, and "That's the Question, Do You Know the Answer." He also would put his next caller on the air by asking, "Who's Playing Time Out For Trivia." Plaintiff suggests that these phrases are protectible and that defendant's use of them constitutes an infringement. Defendant counters, however, by submitting an affidavit from Donoho stating that he developed these phrases spontaneously. Affidavit of Donoho ¶¶ 7-9.
The show's creator also employed various special features during the program, which plaintiff claims deserve protection. For example, the program intermittently presented both crowd scenes and prerecorded cheers. Moreover, plaintiff used a triangular banner, the usual form for sports pennants, with the "TOFT" insignia to introduce its viewers to the show. Red, white, and blue draped bunting, similar to that seen at many sporting events and political rallies, was also utilized as part of the show's set. Finally, plaintiff used sports logos throughout the program and block lettering, in combination with neon, on its title page. Plaintiff suggests that these factors are protectible, either individually or, in conjunction with Donoho's phrases, as part of plaintiff's trade dress. Complaint ¶ 52.
TOFT operated in the aforementioned form until June 1989 when Donoho and Corwin left the program. Both were hired by defendant's Los Angeles television station, KABC, and began to work shortly thereafter on defendant's program, Monday Night Live ("MNL"), as host and producer, respectively.[4] MNL is a live sports show broadcast in the Los Angeles area only. The program lasts for thirty minutes and is shown on Monday evenings in conjunction with the weekly Monday Night Football game. In fact, Donoho stated on the air that the show would only last until the conclusion of the National Football League's regular season.
While MNL is a sports show, it differs from Time Out For Trivia because it is not limited to sports trivia. Instead, it includes recaps of sporting events, interviews with athletes and fans, performances by college marching bands, and other special features, like tours through athletes homes. Plaintiff alleges that many of the features MNL uses were taken from TOFT. Specifically, plaintiff argues that Donoho continues to use the three phrases noted earlier and that such use constitutes a Lanham Act violation. Moreover, plaintiff argues that defendant's use of many of the various other accessories, like triangular pennants, crowd scenes, prerecorded cheers, bunting, neon and block lettering, and a large television screen with team logos, also violates the Act.
Since Donoho and Corwin left plaintiff's employ, TOFT has remained on the air, albeit in a different format.[5] The show, while still being shown over the Financial News Network, is now presented only in five minute clips and only on weekends. *197 Additionally, while the show has retained its sports trivia focus, there is a new host and most of the alleged special features, like bunting and some of Donoho's phrases, are no longer used. In fact, the only remaining similarities are the usage of block and neon lettering, triangular pennants, and the phrase, "Who's Playing Time Out For Trivia." "Take A Hike" has been replaced with "You're Outta Here" and "That's the Question, Do You Know the Answer" is no longer asked. These changes in TOFT's format were instituted after Donoho and Corwin departed.

II. DISCUSSION
The case is before this court on a motion for a preliminary injunction. Therefore, the strict standards established by the Second Circuit must be satisfied. A preliminary injunction is proper when the plaintiff shows:
irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.
Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 206-07 (2d Cir.1979).
Plaintiff has sued for trademark infringement and trade dress infringement under section 43(a) of the Lanham Trade-Mark Act.[6] At this juncture, we recognize that most of plaintiff's claims, with Donoho's phrases representing the main exception, in actuality are based on trade dress infringement, rather than trademark infringement, although the legal significance of the difference is limited. See Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc., 781 F.2d 604, 608 (7th Cir.1986). Trade dress represents "`the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics.'" LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 75 (2d Cir.1985) (quoting John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983)); see also Blau Plumbing, 781 F.2d at 608 (trade dress "denotes the form in which a producer presents his brand to the market"). In the case at bar, plaintiff is seeking protection for many of the individual features of its program, as well as for the overall image its program presents when these elements are viewed collectively.
Protection of trademarks or trade dress is available upon a showing that the mark or dress has acquired secondary meaning[7] and that there is a likelihood of confusion as to the source of the product. Centaur Communications, Ltd. v. A/S/M Communications, Inc., 830 F.2d 1217, 1221 (2d Cir.1987); Dallas Cowboys Cheerleaders, 604 F.2d at 203-04; P.F. Cosmetique, S.A. v. Minnetonka Inc., 605 F.Supp. 662, 667 & n. 5 (S.D.N.Y.1985). This two-pronged inquiry resolves whether plaintiff has a protectible interest and whether that interest is being infringed. Centaur Communications, 830 F.2d at 1221. The defendant, in turn, can claim as a defense that the trademark or trade *198 dress sought to be protected is functional and, therefore, not covered by section 43(a). LeSportsac, 754 F.2d at 76.

A. Irreparable Harm

Irreparable harm has been called "`[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction.'" Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir.1983) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2948, at 431 (1973)). Proving such harm requires showing a threat of actual injury for which the available legal remedies are inadequate. Sampson v. Murray, 415 U.S. 61, 88, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974) (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07, 79 S.Ct. 948, 954-55, 3 L.Ed.2d 988 (1959)). This requirement proves fatal to plaintiff's instant application. As noted, plaintiff has ceased producing TOFT in its original format. All of the allegations of plaintiff's complaint, however, refer to TOFT in its initial format. In fact, any mention of plaintiff's amended program is absent from its complaint and motion papers. Therefore, since plaintiff virtually has ceased using any of the alleged trademarks or trade dress it claims defendant is infringing,[8] there is no need for the extraordinary remedy of a preliminary injunction. Plaintiff is no longer directly competing with defendant and, therefore, can recover any damages suffered in the ordinary course of litigation.
Plaintiff suggested at oral argument that in January 1990 it planned to institute a new program with a format similar to the old TOFT. Tr. at 5. Any damages that plaintiff's prospective program may suffer can be addressed at that future time. They are far too speculative to form the basis for presently granting injunctive relief. See 11 C. Wright & A. Miller, Federal Practice & Procedure § 2948, at 436 (1973); accord Kaplan v. Board of Educ. of City School Dist., 759 F.2d 256, 259 (2d Cir.1985) (predictions of "unrest" too speculative to grant preliminary injunction). In addition, we recognize that this particular argument may become moot since defendant's program is scheduled to end in December, before plaintiff's new program will begin.
It is recognized that TOFT does, in fact, still exist, although in a drastically modified format. Therefore, the argument possibly could be made that defendant's present use of plaintiff's trademarks or trade dress violates plaintiff's rights in the new TOFT. This new format, however, is almost completely different from the old TOFT and from MNL. The new TOFT is only presented in five minute segments on cable television by FNN. It is only shown on weekends and FNN does not even show the program to all its subscribers.[9] Additionally, two of Donoho's original three phrases are no longer utilized. Many other special features, like the bunting and crowd scenes, are missing as well. Therefore, of plaintiff's original allegedly protectible interests, the viability of which we are not convinced, see infra, only a few features actually remain. Specifically, plaintiff has continued to utilize triangular pennants, block letters with neon, and the phrase, "Who's Playing Time Out For Trivia." Defendant's use of these features alone does not subject plaintiff to irreparable harm. There is simply too little, if any, likelihood of confusion between MNL and the new TOFT to suggest that plaintiff is being harmed to a degree that cannot be addressed in the ordinary course of litigation. Bell & Howell, 719 F.2d at 46.
Plaintiff's only real discussion of irreparable harm relates to the harm it may suffer because of any public affiliation with MNL, which for these purposes we admit contains scenes that are in bad taste. Plaintiff's Memorandum of Law in Rebuttal at 1. Notwithstanding this fact, plaintiff has not shown how it is being irreparably harmed by these activities. First, the *199 old TOFT is no longer in existence and plaintiff's plans for a new program are too speculative to afford any injunctive relief. Second, the new TOFT is so dramatically different from MNL that it is illogical to suggest that plaintiff is harmed by defendant's allegedly vulgar program. In fact, defendant's use of these "vulgarities" actually helps dismantle any argument that there is a likelihood of confusion between the programs. Plaintiff cannot have it both ways. It cannot argue that it is being irreparably harmed by defendant's tasteless program and yet avoid the necessary conclusion that these same features decrease the likelihood of confusion between the two programs. Since there is virtually no likelihood of confusion, plaintiff cannot prove it is being irreparably harmed.[10]
We conclude, therefore, that plaintiff cannot establish irreparable harm and hereby by deny its motion for a preliminary injunction.

B. Probable Success on the Merits/Serious Questions Going to the Merits

While we have resolved the instant motion on the irreparable harm issue, we will, nonetheless, address the other prongs of the preliminary injunction formula.[11] As noted, proving a violation of section 43(a) in this case involves showing secondary meaning and a likelihood of confusion. Moreover, the mark or dress sought to be protected cannot be functional.[12]

1. Secondary Meaning
Secondary meaning is shown when "`the primary significance of the term in the minds of the consuming public is not the product but the producer.'" 20th Century Wear, Inc. v. Sanmark-Stardust Inc., 815 F.2d 8, 10 (2d Cir.1987) (quoting Ralston Purina Co. v. Thomas J. Lipton, Inc., 341 F.Supp. 129, 133 (S.D.N.Y.1972)). The Second Circuit has spelled out numerous factors which go into determining the existence of secondary meaning, such as advertising expenditures, consumer studies linking the mark to the source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and length and exclusivity of the mark's use. Centaur Communications, Ltd. v. A/S/M Communications, Inc., 830 F.2d 1217, 1222 (2d Cir.1987). Without going into detail regarding each factor, we express serious doubts as to whether the features of plaintiff's program, either individually or collectively, have acquired secondary meaning. There has been no showing by plaintiff that any of the items, like bunting or crowd scenes, have come to be identified with plaintiff or with Time Out For Trivia. Moreover, even when viewed in conjunction with one another, there has been no indication that the public associates these traits with plaintiff. Rather, these are features that have been used in various contexts for many years and there is nothing distinctive about them or the way they are employed. See Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc., 781 F.2d 604, 610 (7th Cir.1986); see also Vibrant Sales, Inc. v. New Body Boutique, Inc., 652 F.2d 299, 303 (2d Cir.1981) *200 (requiring proof of secondary meaning and non-functionality insures that only "unique or distinctive identifying features" receive protection), cert. denied, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). To hold otherwise would suggest granting plaintiff a monopoly in using these commonplace items.
The phrases used by Donoho have probably not acquired secondary meaning either. While there is some evidence that the phrases are associated with Donoho himself, this is different than their association with plaintiff or plaintiff's program. In Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831 (6th Cir.1983), for example, the parties stipulated that the phrase, "Here's Johnny," though always spoken by a third party, was actually associated with Carson himself. Id. at 836.[13] There has been no such showing by plaintiff in the case at bar.

2. Likelihood of Confusion
The Second Circuit has recognized that the gravamen of a claim under section 43(a) is a showing of likelihood of confusion as to the source of defendant's products. Standard & Poor's Corp. v. Commodity Exch., Inc., 683 F.2d 704, 708 (2d Cir.1982). In Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), the court specified the following factors to be balanced in calculating the likelihood of confusion: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the senior user of the mark will bridge the gap; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the quality of the junior user's mark; and (8) the sophistication of the relevant consumer group. Id. at 495. The courts have cautioned that these factors are only a guideline and not dispositive of this issue. See Lois Sportswear, U.S.A. v. Levi Strauss & Co., 799 F.2d 867, 872 (2d Cir.1986). In comparing MNL with the old TOFT, the show defendant is alleged to have infringed, we are doubtful as to whether such confusion can be shown. Plaintiff, first of all, has exhibited no actual evidence of confusion. Moreover, while there are elements of the two shows that are similar, the vast number of segments of MNL that are unrelated to trivia make the likelihood of confusion quite remote. In fact, the most prevalent opportunity for confusion is due to Donoho's appearance on both shows. Plaintiff does not have any protectible interest in Donoho's mannerisms or phrases, however, and has not alleged any contractual limitation on Donoho's ability to perform. See KGB, Inc. v. Giannoulas, 104 Cal.App.3d 844, 164 Cal. Rptr. 571, 582-83 (1980) (court refused to enjoin defendant, who originally performed without a script as "San Diego Chicken," from appearing in a different chicken outfit and working for another employer).

3. Functionality
Functionality, as noted, is a defense that can be raised by the defendant. In this context, functionality has been defined as a feature that "`is essential to the use or purpose of the article or [that] affects the cost or quality of the article.'" Warner Bros. v. Gay Toys, Inc., 724 F.2d 327, 331 (2d Cir.1983) (quoting Inwood Laboratories v. Ives Laboratories, 456 U.S. 844, 850-51 n. 10, 102 S.Ct. 2182, 2186-87 n. 10, 72 L.Ed.2d 606 (1982)), cited with approval in LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 77 (2d Cir.1985). See generally Note, The Problem of Functional Features: Trade Dress Infringement Under Section 43(a) of the Lanham Act, 82 Colum.L.Rev. 77 (1982) (general discussion of functionality). The purpose of precluding trademark protection for functional elements is to encourage competition by eliminating the monopolization of the essential elements of a product. LeSportsac, 754 F.2d at 77. Again, we will not look to each of the features plaintiff claims can be *201 protected. Nonetheless, we suggest that at least some of the elements are functional. For example, sports logos and sports pennants, and probably red, white, and blue bunting, are functional, essential to defendant's production of an authentic sports program.

III. CONCLUSION
Plaintiff's primary, yet unadmitted, grievance appears to be that Donoho's departure has left them in a bind. Donoho has taken his personality, his phrases, and perhaps his followers to another employer. In addition, some allegedly protectible features are seen on both plaintiff's and defendant's programs. Nonetheless, we have grave doubts as to whether plaintiff can succeed at a trial on the merits. We recognize, however, that we were only presented with a motion for a preliminary injunction and as we were able to resolve the application based on a lack of irreparable harm we do not tell plaintiff to "Take a Hike." We do suggest, however, that plaintiff faces serious obstacles and, in keeping with the parlance of this case, albeit with slight modification, we submit to plaintiff that "These Are the Questions, Do You Have the Answers."
SO ORDERED.
NOTES
[1] Plaintiff's motion for a temporary restraining order was denied after oral argument on September 28, 1989.
[2] We have referred to the program's existence in the past tense. While TOFT is still being aired, its current format is drastically different from the one which plaintiff claims defendant has infringed. See infra p. 196. This distinction is of crucial importance in resolving plaintiff's instant application.
[3] In Exhibit A to the Complaint, a managerial employee of plaintiff is quoted as saying, "For the most part, people enjoy his shtick.... It's all part of a game they play together."
[4] There is no contention that either Donoho or Corwin breached any contract by leaving plaintiff's employ, nor is it suggested that either one violated a covenant not to compete. However, plaintiff does allege that defendant interfered with its contractual relationship with Corwin, that it caused Donoho to breach an agreement to appear on a program that was to have been a collaborative effort by plaintiff and defendant, and that defendant, through Donoho and Corwin, misappropriated trade secrets. Complaint ¶¶ 57-64.
[5] At oral argument, plaintiff's counsel suggested that this new approach was only a temporary measure to be presented until a full-length program could be developed.
[6] Section 43(a) provides:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including works or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he or she is or is likely to be damaged by the use of any such false description or representation.
15 U.S.C. § 1125(a) (1982). An amendment of this section, passed in 1988, will become effective on November 16, 1989.
[7] In a case where the plaintiff is seeking to protect an arbitrary, fanciful, or suggestive term, rather than trade dress, secondary meaning need not be shown. See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 11 (2d Cir.1976). With respect to the phrases Donoho uses, we recognize that they are either generic or descriptive and, therefore, require a showing of secondary meaning.
[8] At this time we do not express any opinion as to the issue of plaintiff's possible abandonment of its alleged trademarks or trade dress.
[9] Defendant claims that many cable stations in the Los Angeles area preempt FNN on weekends, thereby curtailing viewership of the new TOFT format. Defendant's Brief at 27.
[10] The Second Circuit has ruled that irreparable harm can be shown by proving a likelihood of confusion. Standard & Poor's Corp. v. Commodity Exch., Inc., 683 F.2d 704, 708 (2d Cir. 1982); P.F. Cosmetique, 605 F.Supp. at 666. In this respect, both irreparable harm and probable success on the merits are proven simultaneously. Standard & Poor's, 683 F.2d at 708. The foregoing discussion resolves this issue, however, since the two programs, as they currently exist, are simply too distinct for there to be any likelihood of confusion. Therefore, plaintiff cannot show irreparable harm by this alternate route.
[11] The parties fully briefed these additional issues. For the following discussion, we assume that plaintiff has been irreparably harmed by defendant's infringement of its original show. Moreover, the discussion of the merits of plaintiff's claim refers to plaintiff's original program.
[12] We recognize that a balancing of hardships is part of the "serious questions" prong of the preliminary injunction test. Since plaintiff is no longer operating TOFT in its original format, it would impose a grave hardship on defendant to force it to change its program because of the possibility that plaintiff may institute a full-length program in the future. Moreover, with respect to the current TOFT, the utter lack of similarity between it and MNL also suggests that the balancing of hardships would be in defendant's favor.
[13] We recognize that this part of the Carson decision dealt with a right of publicity. Nonetheless, the example remains appropriate.