**RDF MEDIA LIMITED, Plaintiff,**

v.

**FOX BROADCASTING COMPANY, et al., Defendants.**

**No. CV 04–10227 SJO.**

United States District Court, C.D. California.

May 10, 2005.

Daniel Anthony Fiore, Stanton L. Stein, Alschuler Grossman Stein & Kahan, Santa Monica, CA, for Plaintiff.

Lisa E. Stone, Robert H. Rotstein, McDermott Will & Emery, Los Angeles, CA, for Defendants.

## ORDER RE DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

OTERO, District Judge.

This matter is before the Court on Defendants Fox Broadcasting Company's and Rocket Science Laboratory, LLC's (collectively referred to as "Defendants") Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") and Motion to Strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. The Motion to Dismiss the copyright claims is made on the grounds that: (1) Plaintiff RDF Media Limited ("Plaintiff" or "RDF") failed to plead that it has registered the copyright in its program "Wife Swap US"; (2) the Lanham Act trade dress infringement claims rest solely on alleged copying of the expressive elements of the Plaintiff's work; and the unfair competition claims and civil conspiracy claim are congruent with the Lanham Act claims and insufficient as well. Having thoroughly considered the matter, the Court deemed the matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78. Accordingly, the hearing was VACATED, and the matter taken under submission. For the reasons discussed below, Defendants' Motion

to Dismiss is DENIED in part and GRANTED in part and the Motion to Strike is DENIED in part and GRANTED in part.

## I. BACKGROUND

This action arises out of a reality television show, "Trading Spouses," and its alleged infringement upon Plaintiff's "Wife Swap." Mot. to Dismiss at 2. It is alleged that both shows "center on the idea of switching spouses from disparate families and watching the ensuing interactions." *Id.*

Plaintiff allegedly created and produced "Wife Swap UK," a reality television show in which wives with contrasting values and lifestyles exchange spouses and families for ten (10) days. Compl. ¶¶ 5–6. "Wife Swap UK" has aired in Britain since January 2003. Compl. ¶¶ 5, 19.

In December of 2002, Plaintiff avers that it entered into an agreement with American Broadcasting Companies, Inc. ("ABC") to produce an American version of the "Wife Swap" show. Compl. ¶¶ 7,17.

Plaintiff avers that in May of 2004, ABC announced the addition of "Wife Swap US" to its programming lineup and began promoting the show. *Id.* Compl. ¶¶ 7, 23–26. Plaintiff further avers that it owns the copyright and trade dress rights in each episode of "Wife Swap UK" and "Wife Swap US." Compl. ¶¶ 12, 17.

Defendants, on the other hand, are alleged to produce, develop, and distribute the reality television show "Trading Spouses," which began airing on the Fox network in July of 2004. Compl. ¶¶ 8–9. Plaintiff alleges "that 'Trading Spouses' unlawfully copies and incorporates 'all of the expressive elements and trade dress of 'Wife Swap US' and 'Wife Swap UK.' " *Id.* Compl. ¶ 29.

Based on the foregoing, Plaintiff asserts eight claims against Defendants. The First through Third claims assert copyright infringement, alleging that Defendants infringed Plaintiff's copyrights by copying the protectable expressions of "Wife Swap." Compl. ¶¶ 38–68. The Fourth and Fifth claims allege that Defendants engaged in trade dress infringement in violation of the Lanham Act by imitating the "total image and appearance" of "Wife Swap US," that is, by imitating

[t]he selection, compilation, arrangement, sequence, and combination of the cast of characters, the structure of each airing of a complete swap, the sequence of events, the plot, the tone, the theme, the pace, the scene set-ups, the narration, the dialogue that arises from constructed situations, the contrasting settings, the structured before-and-after dialogue, the topics explored, the dramatic and comedic effect created by music, and the introductory segment ....

Compl. ¶¶ 69–102. Plaintiff's Sixth and Seventh claims allege that Defendants have been and are engaged in unfair competition by reason of their infringing activity and misappropriation of Plaintiff's intellectual property. Compl. ¶¶ 103–112. The Eighth claim for civil conspiracy alleges that Defendants conspired to engage in unfair competition and other unfair practices by producing, distributing and broadcasting "Trading Spouses." *Id.*

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to 12(b)(1)

■ It is a fundamental legal principle that federal courts are courts of limited jurisdiction. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989) (cita-

tions omitted). Lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived: "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3); *Hernandez v. McClanahan,* 996 F.Supp. 975, 977 (N.D.Cal.1998).

Federal courts "jealously" guard their own jurisdiction and, where appropriate, will dismiss a case for lack of subject matter jurisdiction even if the issue is not raised by the parties. *See In re Mooney,* 841 F.2d 1003, 1006 (9th Cir.1988), *overruled on other grounds by Partington v. Gedan,* 923 F.2d 686, 688 (9th Cir.1991). The plaintiff in a case bears the burden of establishing that the court has jurisdiction. *Rio Prop's, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir.2002).

B. *Motion to Dismiss Pursuant to 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1356 (1990). Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000); *Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1101 (9th Cir.1999); *Newman v. Universal Pictures,* 813 F.2d 1519, 1521–1522 (9th Cir. 1987).

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). A motion to dismiss for failure to state a claim is generally viewed with disfavor and is rarely granted. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The court must view all allegations in the complaint in the light most favorable to the non-movant and must accept all material allegations—as well as any reasonable inferences to be drawn from them—as true. *See Big Bear Lodging Ass'n,* 182 F.3d at 1101; *Am. Family Ass'n Inc. v. City and County of San Francisco,* 277 F.3d 1114, 1120 (9th Cir.2002).

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir.1991). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). Rule 12(b)(6) states that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b).

For all these reasons, "[d]ismissal is warranted only if it appears to a certainty that [plaintiff] would be entitled to no re-

lief under any state of facts that could be proved." *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). However, a court need not accept as true unreasonable inferences or conclusory legal allegations. *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Finally, dismissal is proper only in extraordinary cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981).

■ "Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.,* 942 F.2d 1467, 1472 (9th Cir.1991). Under the Federal Rules of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). A district court can deny leave "where the amendment would be futile ... or where the amended complaint would be subject to dismissal ." *Saul v. U.S.,* 928 F.2d 829, 843 (9th Cir.1991) (citations omitted); *see also Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir.1998); *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.").

However, the court's discretion in deciding whether to dismiss without leave to amend "is particularly broad" when the plaintiff previously has been granted leave to amend. *Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073, 1084 (9th Cir. 2000) (citations omitted). Leave to amend is usually denied only when there are no facts in dispute and the issue is whether there is liability as a matter of law. *See Albrecht v. Lund,* 845 F.2d 193, 195–96 (9th Cir.1988). Nevertheless, repeated failure to cure deficient pleadings also provides grounds to deny leave to amend. *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir.1990).

### C. *Motion to Strike*

Rule 12(f) states:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f).

■ Motions to strike are generally disfavored because of the limited importance of pleadings in federal practice and because it is usually used as a delaying tactic. William Schwarzer, *et al.,* Federal Civil Procedure Before Trial § 9:375 (citing *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1478 (C.D.Cal.1996); *Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir.2000)). Before a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed. *See S.E.C. v. Sands,* 902 F.Supp. 1149, 1165 (C.D.Cal.1995); *see also Systems Corp. v. American Telephone and Telegraph,* 60 F.R.D. 692, 694 (S.D.N.Y.1973). As with motions to dismiss for failure to state a claim, when ruling on a motion to strike, the court must view the pleading under attack in the light most favorable to the pleader. *Lazar v. Trans Union L.L.C,* 195 F.R.D. 665, 669 (C.D.Cal.2000).

## III. DISCUSSION

### A. Motion to Dismiss

#### 1. Plaintiff's Copyright Infringement Claims Are Not Precluded by 17 U.S.C. § 411(a).

▇ Plaintiff's first three claims involve copyright infringement. Claim One is for copyright infringement pursuant to 17 U.S.C. § 501. Claims Two and Three are for contributory copyright infringement and vicarious copyright infringement, respectively, pursuant to the same section. Defendants argue that the instant case should be dismissed because 17 U.S.C. § 411(a) states in pertinent part, "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made." As such, registration is a condition precedent for a court to exercise jurisdiction in an infringement action. *Jefferson Airplane v. Berkeley Systems, Inc.*, 886 F.Supp. 713, 715 (N.D.Cal.1994); *see also Joyce v. Renaissance Design, Inc.*, 56 U.S.P .Q.2d 1541 (C.D.Cal.2000) (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir.1989)). Defendants contend that, absent copyright registration, the court lacks subject matter jurisdiction over the matter and the case may be dismissed under Rule 12(b)(1). Fed.R.Civ.P. 12(b)(1); 17 U.S.C. § 411(a).

In Plaintiff's Opposition filed on March 4, 2005, Plaintiff concedes that as of the date of the filing of the Complaint only the first episode had a registration effective date prior to the commencement of this action.[1] Opp'n at 5–6.

However, on March 4, 2005, Plaintiff's counsel, Samuel E. Rogoway, submitted a declaration that on March 2, 2005, he was advised by the Copyright Office that the copyright certificates for all nine of the "Wife Swap US" episodes identified in the Complaint had issued. *See* Rogoway Decl. ¶ 6, Ex. A. As such, all of RDF's registrations are now effective. This issue is now moot. Therefore, the Motion to Dismiss claims One through Three of the Complaint is DENIED.

#### 2. Allegations of Lanham Act Violations Are Improper in this Action.

▇ Plaintiff's Fourth and Fifth claims are for trade dress infringement and contributory trade dress infringement pursuant to 15 U.S.C. § 1125(a). To withstand a motion to dismiss an infringement claim under § 43(a) of the Lanham Act—whether it be a trademark claim or a trade dress claim [2]—a plaintiff must identify the mark and allege three basic elements: (1) distinctiveness; (2) nonfunctionality; and (3) likelihood of consumer confusion. *See Clicks Billiards Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir.2001).

▇ Plaintiff fails to meet this minimal standard. The trade dress allegedly infringed is:

The total image and appearance of "Wife Swap US," as defined by the selection, compilation, arrangement, sequence, and combination of the cast of characters, the structure of each airing

---

[1] The application for the first episode was received by the Copyright Office on December 10, 2004. The Complaint was filed on December 15, 2004. The applications for the remaining eight shows were received by the Copyright Office on February 4, 2005. *See* Ex. A accompanying Pl's Opp'n to Defs' Mot. to Dismiss.

[2] Plaintiff is claiming trade dress, not trademark, infringement. However, "the legal significance of the difference is limited." *See Score, Inc. v. Cap Cities/ABC Inc.*, 724 F.Supp. 194, 197 (S.D.N.Y.1989) (citing *Blau Plumbing, Inc. v. S.O.S. Fix-it, Inc.*, 781 F.2d 604, 608 (7th Cir.1986)).

of a complete swap, the sequence of events, the plot, the tone, the theme, the pace, the scene set-ups, the narration, the dialogue that arises from constructed situations, the contrasting settings, the structured before-and-after dialogue, the topics explored, the dramatic and comedic effect created by music, and the introductory segment, constitutes the trade dress of "Wife Swap US." The unique images, scenes, themes, and artistic choices employed by RDF Media in "Wife Swap US" serve to identify the source of the program.

Compl. ¶ 70. In effect, RDF is asking this Court to recognize the reality show itself as the trade dress subject to protection. "Because this would be tantamount to saying that the product itself—in this case, the [reality show]—can serve as its own trademark, we decline to do so." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 63 (2d Cir.2000) (holding that a song cannot serve as an identifying mark because this "would stretch the definition of trademark ... too far and give trademark law a role in protecting the very essence of the song, an unwarranted extension into an area already protected by copyright law.").

RDF's contention that the "image and appearance of 'Wife Swap US,'" Compl. ¶ 70, is the trade dress that was allegedly infringed fails to grasp the fundamental distinction between copyright protection and trademark protection.

Trademark law is concerned with protection of the symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source. It does not protect the content of a creative work of artistic expression as a trademark for itself. Copyright law protects the artist's right in an abstract design or other creative work.

*EMI Catalogue P'ship*, 228 F.3d at 63 (citing *United States v. Giles*, 213 F.3d 1247, 1252 (10th Cir.2000)) (emphasis omitted). As one court noted,

Although titles of books, plays, films, and songs, distinctive elements of a television series, and distinctive comic book characters have qualified as marks entitled to protection under section 1127 of the Lanham Act, the scope of section 1127 does not extend to the corpus of the book, play, film, song, television show, or comic book.

*Whitehead v. CBS/Viacom, Inc.*, 315 F.Supp.2d 1, 13 (D.D.C.2004); *see also* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 6:5 (4th ed. 2004) ("The collection of words in a novel are not a 'trademark' indicating the origin of that novel. Rather, the story is a 'product,' not a symbol of origin. If someone without permission reproduces the story, the remedy lies in copyright, not in trademark.") The court in *Whitehead* went on to note, "An author may invoke copyright law to protect original expression in an entire work, not the Lanham Act." *Id.; see also EMI Catalogue P'ship*, 228 F.3d at 64 ("The creation and expression of an original work is protected by copyright law, and once an original work has been produced trademark law is not the proper means of protecting the rights in this originality.").

■ Plaintiff argues that "the same elements of an original work may be protected as both copyrightable expression and the trade dress of the work itself." Opp'n at 8–9. While this is true, Plaintiff's argument is disingenuous. RDF posits, "in a principally visual medium, a creator or producer's expressive choices will necessarily manifest visually on the screen; and that visual expression necessarily will form the overall look and appearance of the program—in other words, the trade

dress."[3] *Id.* at 9. If this Court were to accept the proposition that "visual expression necessarily will form the overall look and appearance of the program—in other words, the trade dress," then every incident of visual expression would be subject to copyright and trademark protection and that protection would last in perpetuity. This theory has been rejected on numerous occasions. *See, e.g., Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003); *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593 (9th Cir.2000).

Plaintiff alleges that its trade dress is defined as the "total image and appearance of 'Wife Swap US' as shaped by the selection, compilation, arrangement, sequence, and combination of the expressive elements of the program." Opp'n at 9–10. As aforementioned, trademark and copyright protection may coexist. *See* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 6:5 (4th ed.2004). However, in this case, they do not. Plaintiff is merely repackaging its copyright claims in trademark causes of action. In its copyright claim, RDF asserts that "Defendants copied ... both the individual protectable expressive elements of 'Wife Swap UK' and 'Wife Swap US' and the expressive manner in which RDF media has *selected, compiled, arranged, sequenced, and combined the protectable and non-protectable elements* [thereof]." Compl. ¶ 41 (emphasis added).

In the trademark claims, RDF asserts that Defendants copied "the total image and appearance of 'Wife Swap US' as de-fined by the *selection, compilation, arrangement, sequence, and combination of the cast of characters ....*" *Id.* ¶ 70 (emphasis added). The only difference in the trademark claims is that Plaintiff further avers that "the structure of each airing of a complete swap, the sequence of events, the plot, the tone, the theme, the pace, the scene set-ups, the narration, the dialogue that arises from constructed situations, the contrasting settings, the structured before-and-after dialogue, the topics explored, the dramatic and comedic effect created by music, and the introductory segment" further infringe Plaintiff's trade dress. *Id.* ¶ 70. None of these further assertions, however, constitute a trademark or trade dress. All of the foregoing elements *are* the product. They are the essence of the program, and "intellectual property law protects the owners' rights in these unique combinations in distinct ways that lie outside the realm of trademark law." *EMI Catalogue P'ship*, 228 F.3d at 63; *see also Williams v. UMG Recordings*, 281 F.Supp.2d 1177, 1185 (2003) ("[T]he Supreme Court's holding [in *Dastar* ] did not depend on whether the works were copyrighted or not.... [T]he Court's holding is in no way limited to uncopyrighted material. Rather, in being careful not to extend trademark protections, the Court noted that protection for communicative products was available through copyright claims."). Finally, these elements are squarely within the dominion of copyright law and would render copyright law superfluous if courts were to construe claims such as these as warranting trademark protection.[4]

**3.** Plaintiff cites as authority *Chuck Blore & Don Richman, Inc. v. 20/20 Advertising, Inc.*, 674 F.Supp. 671 (D.Minn.1987) for the proposition that "[t]he expressive aspects of audiovisual works, and of television in particular, necessarily include both images and sounds since without either there can be no communication and hence no expression." *Id.* at 677. However, the *Chuck Blore* court made this declaration when it was referring to 17 U.S.C. § 101, that is, *copyright law not trademark law.*

**4.** RDF's further allegation that the introductory segment and graphics of each episode of "Wife Swap US" comprise the trade dress is

In its Opposition to the Motion to Dismiss, Plaintiff suggests that the Ninth Circuit has adopted an "expansive" definition of trade dress, Opp'n at 11 (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir.1987)), and that "[t]rade dress is the composite tapestry of visual effects." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir.2001). It is the "composite tapestry of visual effects" of "Wife Swap US" that RDF alleges constitutes the distinctive trade dress of its series. Opp'n at 11.

Plaintiff's reliance on *Clicks* and similar cases, is inapposite. In *Clicks* the plaintiff, Clicks Billiards, Inc. ("Clicks"), operated numerous billiards establishments and alleged that Sixshooters, a competing billiards establishment, had infringed its trade dress, which included various features of the layout of the establishments and their proximity to one another. *Clicks*, 251 F.3d at 1256. There, trade dress infringement was proper because the subject matter was the look of the billiards establishment. If Clicks had been precluded from asserting a trade dress infringement action, it would have been left without a remedy. Furthermore, and more importantly, the "composite tapestry of visual effects" referred to by the court in *Clicks* did not constitute the corpus of the service they provided their customers. In the instant case, the "composite tapestry of visual effects" is the program, that is, the product itself, which is protectable, if at all, under copyright law.

Based on the foregoing, this Court concludes Plaintiff has failed "to state a claim upon which relief can be granted." Fed. R.Civ.P. Rule 12(b)(6). Therefore, the Motion to Dismiss claims Four and Five of the Complaint relating to trade dress infringement and contributory trade dress unavailing for the same reasons referenced

infringement are GRANTED without leave to amend.

### 3. The Unfair Competition Claims and the Civil Conspiracy Claims Cannot Be Maintained.

■ Plaintiff's state law claims for unfair competition must fail because they are based on Plaintiff's defective Lanham Act claims. *See, e.g.*, Compl. ¶ 104 ("By reason of the foregoing, including Defendants' unlawful conduct in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, Defendants have been and are engaged in acts of unfair competition . . . ."). Given that the Court has determined that Defendants are not subject to liability under the Lanham Act, Plaintiff's unfair competition claim premised upon the Lanham Act violations must fail. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262–1263 (9th Cir.1994) ("[The Ninth] Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181–82 (9th Cir.2003) ("Rice concedes that his unfair competition claim under § 17200 is dependent on his false advertisement claim under the Lanham Act: 'The parties agree that they rise and fall together.'") (citations omitted).

With the defective Lanham Act allegations, the only predicate offense upon which Plaintiff may rely upon is the copyright infringement allegation. "If a state cause of action . . . entails 'extra elements' beyond the basic elements of copyright, and protects rights that are 'qualitatively different' from those protected by copyright, it survives preemption." *Educational Testing Service v. Simon*, 95 F.Supp.2d 1081, 1091 (C.D.Cal.1999) (citations omit-

above.

ted); *see also* 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 1.01[B][1] (2004) ("[I]f a state-created right is 'within the general scope of copyright,' it is subject to pre-emption, even if the precise contours of the right differ from any of those conferred by Section 106.").

Plaintiff's Sixth, Seventh, and Eighth claims for relief do not entail " 'extra elements' beyond the basic elements of copyright." *Educational Testing Service,* 95 F.Supp.2d at 1091. Furthermore, the rights Plaintiff is asserting are either rights under copyright or rights under Plaintiff's failed Lanham Act allegations. *See, e.g.,* Compl. ¶ 104 ("By reason of the foregoing, including Defendants' unlawful conduct in violation of the Lanham Act . . ."); ¶¶ 109–110 ("Defendants are unfairly competing with RDF Media by misappropriating its intellectual property . . . by diluting the unique value of RDF Media's 'Wife Swap UK' and 'Wife Swap US' programs, infringing RDF Media's trade dress rights . . ., and causing confusion among viewers . . ."); ¶ 114 ("Defendants knowingly and willingly conspired and agreed among themselves to engage in unfair competition . . . ."). In short, all of Plaintiff's state law claims relied upon the alleged Lanham Act violations. Given that this Court denies liability on the basis of the Lanham Act, all state law claims must fail as well, as preempted by the remaining copyright claim. Therefore, the Motion to Dismiss claims Six, Seven, and Eight of the Complaint is GRANTED without leave to amend.

## B. *Motion to Strike*

Motions to strike are generally disfavored because of the limited importance of pleadings in federal practice and because it is usually used as a delaying tactic. William Schwarzer, A. Wallace Tashima and James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:375 (citing *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1478 (C.D.Cal.1996); *Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir.2000)). However, pursuant to *Survivor Prod. LLC v. Fox Broad. Co.,* 2001 U.S. Dist LEXIS 25512 (C.D. Cal. filed June 12, 2001), the Motion to Strike is GRANTED.

*Survivor Prod.* is analogous to this case. There, the producers of the reality television show "Survivor" brought an action against Fox Broadcasting Company ("Fox") alleging that Fox's show "Boot Camp" infringed its copyright in "Survivor." [5] *Survivor Prod. LLC v. Fox Broad. Co.,* 2001 U.S. Dist. Lexis 25512, at *2 (C.D. Cal. filed June 12, 2001). The plaintiffs in that case brought a motion to strike various "exhibits and all of the quotations from newspaper and trade publications that are contained in the complaint, on the grounds that they are immaterial, impertinent, and scandalous." *Id.* at *5. Plaintiffs requested that portions of the complaint containing phrases such as "ripoff" and "copy" be stricken. *Id.* at *4–*5. Defendants also asked that "opinions of journalists and industry observers" that were contained in news articles be stricken. *Id.* at *9.

The court in *Survivor Prod.* noted that "Rule 12(f) motions are generally disfavored, and will be granted only if it is clear that the matter will have no bearing on the controversy before the Court." *Id.* at *8 (citing *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.

---

5. As an aside, Survivor Productions also brought claims for common law unfair competition, unfair business practices pursuant to California Business and Professions Code § 17200 *et seq.* and civil conspiracy. As in the instant case, the court granted defendants' motion to dismiss those claims.

1991)). Nonetheless, the court found the subject exhibits and quotations immaterial under Rule 12(f) when it stated "Plaintiffs must show that Boot Camp is 'substantially similar' to protectable elements of Survivor" and that "the news articles quoted in Plaintiffs' complaint are legally irrelevant to the issue of substantial similarity, as this determination is to be made by the finder of fact, unaided by the opinions of journalists and industry observers." *Id.* at *9.

The court went on to posit that the subject material was also scandalous because the articles "lend[ ] artificial credence to the opinions contained in the articles, and gives the appearance that such opinions are legally relevant to the dispute. Such a consequence is particularly damaging in this case where the articles describe Defendants' series in such pejorative and colloquial terms as 'ripoff' ...." *Id.* at *10–*11. The court specifically found that "other portions of the pleading adequately describe the nature of the allegations against the defending party." *Id.* at *11.

 In the instant case, Defendants move to strike various portions of the Complaint, including paragraphs that allege that industry commentators were quoted as saying that "Trading Spouses" is a "rip-off" of "Wife Swap US," Compl. ¶¶ 9, 31, 35–36; that Fox was "behaving like there's an Emmy category for Most Brazen Ripoff," *Id.* ¶ 32; that "Trading Spouses" was a "carbon copy" of "Wife Swap US," *Id.* ¶ 33; and that "Trading Spouses" is a "rush-job rip-off," *Id.* ¶ 34. Essentially, most of the portions of the Complaint that Defendants seek to strike state that "Trading Spouses" is a rip-off or some variation of that concept. Similarly, the exhibits that Defendants seek to strike are news-type articles from which Plaintiff quotes in the aforementioned paragraphs of the Complaint.

Plaintiff suggests that the exhibits and the phrases therefrom are important to its case because the Ninth Circuit's intrinsic test for copyright infringement "asks whether an 'ordinary, reasonable observer would find a substantial similarity of expression of the shared idea.'" Opp'n to Defs' Mot. to Strike at 9 (citations omitted). This analysis, however, ignores the reasoning set forth in *Survivor Prod.* that suggests that these articles "are legally irrelevant to the issue of substantial similarity," *id.* at *9, and that "inclusion of the material ... lends artificial credence to the opinions contained in the articles, and gives the appearance that such opinions are legally relevant to the dispute." *Id.* at *10. Similarly, "other portions of the pleading adequately describe the nature of the allegations against the defending party." *Id.* at *11.

 The exception to the foregoing are paragraphs twenty-two and thirty-six and Exhibit A regarding admissions by Fox's representative that they were aware of "Wife Swap US" and that they intended to create a show similar to "Wife Swap US." *See* Compl. ¶¶ 22, 36, Ex. A. These portions of the Complaint may be relevant to show access to Plaintiff's show, the intent of Defendants, and willful infringement.[6] Therefore, the Motion to Strike these portions of the Complaint is DENIED and the Motion to Strike paragraphs four, nine, and thirty-one through thirty-five, and Exhibits B through G of the Complaint is GRANTED.

## IV. CONCLUSION

Defendants' Motion to Dismiss claims One through Three for copyright infringe-

---

**6.** Given that these portions of the Complaint may be relevant to access and intent, the Court expresses no opinion on whether they "provide 'background facts relating to the ... development of the two programs.'" Opp'n to Defs' Mot. to Strike at 8.

ment, contributory copyright infringement, and vicarious copyright infringement is HEREBY DENIED. The Motion to Dismiss as to all other claims is HEREBY GRANTED without leave to amend. The Motion to Strike paragraphs twenty-two, thirty-six and Exhibit A is HEREBY DENIED. The Motion to Strike paragraphs four, nine, and thirty-one through thirty-five, and Exhibits B through G of the Complaint is HEREBY GRANTED.

IT IS SO ORDERED.